UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>**William Soler Justice**</u>

    v.                                          Case No. 20-cv-517-PB
                                                    Opinion No. 2024 DNH 019

<u>**Christopher T. Sununu et al.**</u>

## **MEMORANDUM AND ORDER**

William Soler Justice filed a complaint against various correctional officers and state officials, asserting that he was subjected to unconstitutional treatment while in the custody of the New Hampshire Department of Corrections (DOC). He seeks to hold Daniel Potenza, the former Medical Director of the DOC, liable under 42 U.S.C. § 1983 and state tort law for failing to adequately train and supervise the correctional officers who he claims violated his constitutional rights.[1] Potenza now moves to dismiss the claims against him, arguing that Justice's allegations fail to state a claim under either Section 1983 or state law. I agree, and grant Potenza's motion to dismiss.

---

[1] The complaint is inconsistent as to whether Potenza was the "Medical Director of [the] New Hampshire Department of Corrections" or the "Medical Director of [the] Secure Psychiatric Unit." Doc. 1 at 2, 5. Although I refer to Potenza as the Medical Director of the DOC throughout the order, his precise title has no bearing on my ultimate conclusion.

I.   **BACKGROUND**

After being found incompetent to stand trial in 2018, Justice was civilly committed to the Secure Psychiatric Unit (SPU) for a period of five years. Doc. 1 at 4; Doc. 1-13 at 1. The SPU is a specialized facility within the New Hampshire State Prison for Men that "houses the civilly committed, those found not guilty by reason of insanity, and convicted inmates being treated for serious mental illness[.]" Doc. 71-3 at 7. The unit falls under the jurisdiction of the DOC and is staffed by DOC correctional officers. Id.[2]

Justice alleges that correctional officers within the SPU violated his constitutional rights and subjected him to inhumane treatment on multiple occasions between February 2018 and January 2019. The first incident occurred on February 18, 2018, when a correctional officer deployed a taser into Justice's thigh because Justice was banging on his cell door. Doc. 1 at 5. A few months later, Justice, fearing that he would be tased again, placed his mattress in front of his cell door. Id. at 6. Even though Justice removed the

---

[2]  I draw the following facts from the well-pleaded allegations in Justice's complaint and subsequent filings, which I assume to be true for purposes of analysis. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). Because Justice is a pro se plaintiff, I "look beyond [his] formal complaint and consider material subsequently filed as amendments to that complaint" in evaluating the adequacy of his allegations. Jackson v. Cain, 864 F.2d 1235, 1241 (5th Cir. 1989); accord Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015); Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

mattress when ordered to do so, a correctional officer deployed pepper spray into Justice's cell and left him in the enclosed space, without access to fresh air, for at least thirty minutes. Id.

On July 13, 2018, a different correctional officer deployed pepper spray into Justice's cell after Justice refused to remove newspaper that was covering his cell window. Id. Thirty minutes later, the correctional officer entered Justice's cell and slammed him into a concrete mattress frame. Id.

The final incident occurred on January 22, 2019, after Justice was accused of attempting to spit at a female correctional officer. Id. at 7. Justice was forced onto the ground and restrained by one correctional officer, and then tased by another correctional officer. Id. The officers placed Justice in four-point restraints and then tased him a second time. Id. After he was released from the restraints, a correctional officer subjected Justice to an unnecessary strip search before allowing him to return to his cell. Id.

In addition to these incidents, Justice asserts that he was regularly and unnecessarily segregated from the SPU's general population. Id. at 9. Without identifying the responsible actors, Justice alleges that he was segregated in the SPU's infirmary or locked in his cell for 22 to 24 hours per day for a substantial portion of his time at the SPU. Doc. 71 at 6-7.

Proceeding pro se and in forma pauperis, Justice filed a complaint in this court against the responsible correctional officers and various DOC

officials, including Potenza, the former Medical Director of the DOC.³ Doc. 1 at 2. Justice does not assert that Potenza was directly involved in the challenged incidents, but rather seeks to hold Potenza liable for his failure to adequately train and supervise the correctional officers who were involved. Justice seems to acknowledge that the correctional officers received at least some mental health training, but nonetheless maintains that Potenza should have provided additional training and closer supervision. Id. at 12, 16; Doc. 46 at 2; Doc. 47 at 2; Doc. 71-6 at 27.

      Although some of Justice's claims were dismissed following a preliminary review of his complaint, four claims against Potenza remain. First, Justice asserts that Potenza is liable under Section 1983 for failing to appropriately train the correctional officers "on how to deal with, interact [with], and protect persons who are mentally ill[.]" Doc. 1 at 12. Justice further asserts that Potenza is liable under state tort law for his negligent supervision of the correctional officers. Id. at 14-15. Finally, Justice seeks to hold Potenza liable for intentional and negligent infliction of emotional distress, asserting that Potenza's failure to adequately train and supervise the correctional officers caused Justice to suffer extreme emotional distress.

---

³    Potenza was the Medical Director of the DOC when the events giving rise to this action occurred but left his employment with the DOC prior to the start of this litigation. Doc 71 at 7.

Id. at 15-16. Potenza now moves to dismiss each of the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 66 at 1.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all of the plaintiff's non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state

5

a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III.  ANALYSIS

Potenza asserts that Justice's Section 1983 claim must be dismissed because the complaint does not plausibly allege that Potenza acted with deliberate indifference towards the need for additional training. As to the state law claims, Potenza argues that Justice's allegations fail to articulate an actionable theory of liability. Justice objects, arguing that Potenza is liable under both federal and state law for "fail[ing] to protect [Justice] and turn[ing] a blind eye to [the correctional officers'] abuse." Doc. 71 at 2. I consider Justice's Section 1983 claim before turning to his state law claims.

**A.  Section 1983 Claim**

Justice asserts that, by failing to adequately train the correctional officers on how to interact with and protect SPU patients with mental illnesses, Potenza subjected him to a significant risk of harm in violation of the Due Process Clause of the Fourteenth Amendment. Potenza argues that the claim must be dismissed because Justice's allegations fail to demonstrate that he acted with deliberate indifference.

"Section 1983 provides a private right of action against state actors— that is, public officials acting under color of state law—who deprive individuals of rights confirmed by federal constitutional or statutory law."

6

Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999). It is well established that a government official sued under Section 1983 is "only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. Thus, "[a] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor such that the supervisor's conduct led inexorably to the constitutional violation." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) (cleaned up).

A supervisor's failure to adequately train his subordinates may provide the "affirmative link" needed to state a claim, but only to the extent that "(1) the supervisor failed to train the officers involved, (2) that failure to train caused the violation of the plaintiff's rights, and (3) the failure to train constituted deliberate indifference." McNeal v. LeBlanc, 90 F.4th 425, 432 (5th Cir. 2024) (cleaned up). Deliberate indifference is a "stringent standard of fault" that requires the plaintiff to demonstrate that the supervisor had "actual or constructive notice that a particular omission in [his] training program causes [his] employees to violate the citizens' constitutional rights[.]" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)). Thus, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to

7

train." Id. at 62 (quoting Brown, 520 U.S. at 409).

Justice's allegations, even when liberally construed, fail to satisfy the elements of a supervisory liability claim. As an initial matter, it is far from clear that the allegations in the complaint demonstrate that Potenza acted with deliberate indifference. Justice's allegations indicate, at most, that there is a pattern of correctional officers deploying pepper spray and tasers against SPU patients. See, e.g., Doc. 1-14 at 3; Doc. 71-3 at 27. But this pattern of force, standing alone, cannot demonstrate a pattern of constitutional violations given that the use of tasers and pepper spray can be lawful in certain circumstances. See Porro v. Barnes, 624 F.3d 1322, 1329 (10th Cir. 2010) ("The use of tasers in at least some circumstances . . . can comport with due process.") (emphasis in original); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) ("it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells . . . .") Therefore, these allegations do not demonstrate that Potenza had notice of and was deliberately indifferent to a need for additional training. See Justiniano v. Walker, 986 F.3d 11, 23 (1st Cir. 2021) (holding that an alleged trend of deadly encounters between police and mentally ill citizens failed to plausibly establish deliberate indifference where there were no allegations "that the 'trend' involve[d] constitutional violations at all").

Justice asserts, in the alternative, that the need for mental health

training in this context is so obvious that the failure to institute such training, in and of itself, demonstrates deliberate indifference. Justice is correct that the "unconstitutional consequences of failing to train could be so patently obvious that [a supervisor] could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64. This so-called single-incident exception, however, applies only in a "narrow range of circumstances" where "a violation of federal rights [is] a highly predictable consequence" of the failure to train employees on how to "handle recurring situations." Brown, 520 U.S. at 409.

Justice does not describe what sort of mental health training the correctional officers received, nor does he identify what was missing from that training. Without such details, it is difficult to determine whether the need for additional training was sufficiently obvious. See Young v. City of Providence, 404 F.3d 4, 27 (1st Cir. 2005) ("a training program must be quite deficient in order for the deliberate indifference standard to be met . . . ."); cf. Palmquist v. Selvik, 111 F.3d 1332, 1345 (7th Cir. 1997) (cited favorably in Young, 404 F.3d at 27) (concluding that a municipality was not liable for failing to provide "better or more" training to its police force where it provided at least some relevant training).

But even if I were to conclude that Justice's allegations established deliberate indifference under the single-incident exception, his claim against

9

Potenza would still fail for at least two reasons. First, there are no allegations that Potenza had any authority over the correctional officers' training regime. Justice alleges that Potenza was the "highest-ranking medical professional in [the] SPU" and that he was generally responsible for the SPU patients' clinical care. Doc. 71 at 2; see id. at 4-5. These allegations do not, however, indicate that Potenza had any influence over the substance of the correctional officers' training. Absent such allegations, there can be no inference that Potenza's "own acts or omissions" led to the training failure complained of. Parker v. Landry, 935 F.3d 9, 15 (1st Cir. 2019).

Moreover, even if Potenza was responsible for the correctional officers' training, the allegations fail to establish that the lack of training caused the correctional officers to violate Justice's constitutional rights. To demonstrate causation in a failure to train claim, the plaintiff must allege that the unconstitutional acts would not have occurred had proper training been provided. Justiniano, 986 F.3d at 23.

Justice's allegations fall short of this burden. Because Justice does not allege that the correctional officers' actions were related to his mental illness, it is not clear that additional mental health training would have had any bearing on the officers' actions. Cf. id. (affirming dismissal of a supervisory liability claim based on a failure to provide mental health training where, although the victim was alleged to be mentally ill, there was "no allegation

10

that [the officer's] decision to shoot [the victim] was related" to the victim's mental illness). Moreover, even if I were to infer that the officers' actions were related to Justice's mental health, there is no indication that appropriate training would have counseled the officers to behave differently. That is, even if the officers had received further training on how to interact with mentally ill individuals without resort to force, the allegations do not establish that such interventions would have been an appropriate or effective response to the incidents at issue here. Without specific allegations as to how adequate training would have prevented the correctional officers' actions, there can be no non-speculative inference that the lack of training caused the officers to violate Justice's rights. Accordingly, Justice has failed to state a claim under Section 1983.

**B.    State Law Claims**

In addition to his Section 1983 claim, Justice seeks to hold Potenza liable under state law for negligent supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress. I consider each claim in turn.[4]

---

[4]    In his motion to dismiss, Potenza discusses Justice's Section 1983 and negligent supervision claims but fails to acknowledge that Justice also brought claims against him for intentional and negligent infliction of emotional distress. See Doc. 30 at 2-3 (ordering service on Potenza for Justice's intentional and negligent infliction of emotional distress claims). Nonetheless, because Potenza moved to dismiss the complaint against him in

11

1. <u>Negligent Supervision</u>

Justice asserts that Potenza is liable for his negligent supervision of the correctional officers. Under New Hampshire Law, "[a]n employer may be directly liable for damages resulting from the negligent supervision of its employee's activities." Trahan-Laroche v. Lockheed Sanders, Inc., 139 N.H. 483, 485 (1995). However, liability will only attach if the employer "knew or should have known that [the employee] presented a risk to the plaintiff." Tessier v. Rockefeller, 162 N.H. 324, 343 (2011); see Rapuano v. Tr. of Dartmouth Coll., 334 F.R.D. 637, 654 (D.N.H. 2020). After all, there is no duty to avoid risks that are not reasonably foreseeable, and there can be no liability in the absence of duty. See Cui v. Chief, Barrington Police Dep't, 155 N.H. 447, 449 (2007)

Justice's allegations fail to state a claim for at least two reasons. First, the allegations do not establish that Potenza was the correctional officers' employer. Second, nothing in the allegations indicates that Potenza either knew or should have known that the correctional officers posed a threat to Justice.

---

its entirety, and because my conclusions on Justice's Section 1983 and negligent supervision claims also bear on the remaining claims, I proceed to consider whether Justice has stated a claim for intentional or negligent infliction of emotional distress. If Justice wishes to raise additional arguments as to those claims, he may do so in a motion for reconsideration and I will consider his arguments de novo.

The complaint specifically alleges that the correctional officers were employed, not by Potenza, but by the DOC. Doc. 1 at 3. Indeed, the complaint alleges that Potenza himself was a DOC employee, albeit a supervisory one. Id. at 2. While the issue has not been directly addressed in New Hampshire, courts in other jurisdictions have concluded that "a negligent supervision claim can only be brought against the employer entity and is not cognizable against the individual supervisor." Duran v. Warner, No. 07-5994 (JBS/AMD), 2013 WL 4483518, at *8 (D.N.J. Aug. 20, 2013); see also Foster v. Crandell, 638 S.E.2d 526, 539 (N.C. Ct. App. 2007); Greenfield for Ford v. Budget of Del., Inc., No. N16C-07-115 FWW, 2017 WL 5075372, at *4 (Del. Super. Ct. Oct. 31, 2017).

Even if New Hampshire were to recognize a cause of action for negligent supervision against an individual supervisor, here there are no allegations that Potenza had any supervisory authority or control over the correctional officers. Cf. Restatement (Second) of Agency § 213, cmt. a (1958) (noting that whether "the conduct is subject to a person's directions and is upon his account" is considered in determining liability for negligent supervision). That is, while Potenza may have been a supervisor, there are no allegations that he was the correctional officers' supervisor such that he would have had either the obligation or the right to control the officers.

And, even if Potenza had supervisory authority over the correctional

13

officers, the allegations do not establish that Potenza was aware that the correctional officers posed a threat to Justice. Justice does not allege that the correctional officers had a preexisting history of misconduct, cf. Trahan-Laroche, 139 N.H. at 486; nor does he allege that they were "incompetent, inexperienced or unskilled in a way that caused [his] injury," Cutter v. Town of Farmington, 126 N.H. 836, 841 (1985). Absent any awareness that the officers were in need of additional supervision, Potenza had no duty to deliver such supervision. See Walls v. Oxford Mgmt. Co., Inc., 137 N.H. 653, 656 (1993) ("the scope of the duty imposed is limited by what risks, if any, are reasonably foreseeable."). Accordingly, Justice's claim for negligent supervision must be dismissed.[5]

---

[5] To the extent Justice asserts that Potenza had a duty to control the correctional officers because Justice was in Potenza's custody, his claim fails for similar reasons. Relying on the Restatement (Second) of Torts, the New Hampshire Supreme Court has recognized that "[o]ne who is required by law to take or voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a . . . duty to the other." Marquay v. Eno, 139 N.H. 708, 717 (1995) (quoting Restatement (Second) of Torts § 314A (1965)) (alterations in original). This may include the "duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other[.]" Restatement (Second) of Torts § 320 (1965). The duty of control, however, only attaches if the defendant "has the ability to control the conduct of the third persons" and "knows or should know of the necessity and opportunity for exercising such control." Id. As I explained, the allegations do not indicate that Potenza had either the ability to control the correctional officers or notice of the need for any such control, and therefore do not demonstrate that Potenza had a duty to control the officers. Cf. Marquay, 139 N.H. at 717.

14

2. <u>Intentional Infliction of Emotional Distress</u>

Justice next asserts that Potenza is liable for intentional infliction of emotional distress because his failure to train and supervise the correctional officers caused Justice to suffer extreme emotional distress. "In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier, 162 N.H. at 341 (cleaned up). The standard for extreme and outrageous conduct "is very high," and is only satisfied in rare cases where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

Even if I were to assume that Potenza was responsible for providing the correctional officers with appropriate training and supervision, his failure to do so would not "rise to the level of outrageousness and severity necessary to state a cause of action for intentional infliction of emotional distress." See Brewer v. K.W. Thompson Tool Co., Inc., 647 F. Supp. 1562, 1567 (D.N.H. 1986); see also Restatement (Second) of Torts § 46, cmt. h (1965) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit

15

recovery . . . ."). Moreover, given the absence of plausible allegations that Potenza was aware of the need for additional training or supervision, his conduct cannot be described as either intentional or reckless. Doe v. W. Alton Marina, LLC, 646 F. Supp. 3d 315, 322 (D.N.H. 2022) ("To show recklessness, plaintiff must allege defendant acted 'in deliberate disregard of a high degree of probability that emotional distress will follow.'") (quoting Restatement (Second) of Torts § 46, cmt. i (1965)). Justice's claim for intentional infliction of emotional distress is therefore dismissed.

### 3. Negligent Infliction of Emotional Distress

Finally, Justice asserts a claim for negligent infliction of emotional distress, alleging that he suffered severe emotional distress as a result of Potenza's negligent failure to train or supervise the correctional officers. To state a claim for negligent infliction of emotional distress, a plaintiff must allege "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." O'Donnell v. HCA Health Servs. of N.H., 152 N.H. 608, 611 (2005).

Justice's claim for negligent infliction of emotional distress fails for the same reasons as his other claims. Specifically, because Justice has not sufficiently alleged that appropriate training would have prevented the correctional officers' actions, he has not adequately alleged that Potenza's

16

failure to train the officers caused Justice to suffer emotional distress. Carignan v. N.H. Int'l Speedway, Inc., 151 N.H. 409, 414 (2004) (noting that establishing causation "requires the plaintiff to show that the injury would not have occurred but for the negligent conduct"). And, because Justice has not alleged that Potenza had a duty to supervise the correctional officers, that conduct cannot support a claim for negligent infliction of emotional distress. See Chartier v. Apple Therapy of Londonderry, LLC, 175 N.H. 603, 606 (2023) (discussing the need to demonstrate negligence to succeed on a claim of negligent infliction of emotional distress). Therefore, Justice has failed to state a claim for negligent infliction of emotional distress.

## IV.   CONCLUSION

For the foregoing reasons, Potenza's motion to dismiss (Doc. 66) is granted and Potenza is dismissed from the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 19, 2024

cc:   William Soler Justice, pro se
      Counsel of record