*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO SEPTEMBER 24, 2024

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * * *
                                      *
WILLIAM SOLER JUSTICE                 *
                                      *
              Plaintiff,              *
                                      *   1:20-cv-517-PB
          v.                          *   May 6, 2024
                                      *   3:01 p.m.
CHRISTOPHER T. SUNUNU, ET AL          *
                                      *
              Defendants.             *
                                      *
                                      *
* * * * * * * * * * * * * * * * * * *  *
```

TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

| | |
|---|---|
| For the Plaintiff: | William Soler Justice<br>Appearing Pro Se |
| For the Defendant: | Nathan W. Kenison-Marvin, Esq.<br>NH Attorney General's Office |
| Court Reporter: | Liza W. Dubois, RMR, CRR<br>Official Court Reporter<br>U.S. District Court<br>55 Pleasant Street<br>Concord, New Hampshire 03301<br>(603) 225-1442 |

P R O C E E D I N G S

THE CLERK:  Good afternoon, Judge.

We're here in the matter of William Soler Justice vs. Governor, State of New Hampshire, et al, 20-cv-517-PB, for a status conference.

THE COURT:  All right.  Mr. Justice, you're on -- on the phone.  Can you hear me okay?

MR. JUSTICE:  I can hear you fine, your Honor.

THE COURT:  Okay.  Great.  And I'd ask your guardian, who's also on the phone, can you hear me?

MS. DURYEA:  I can, your Honor.

THE COURT:  Okay.  All right.  So there are a number of --

THE CLERK:  Ms. Duryea, I'm going to have to mute your -- mute your microphone for you while --

MS. DURYEA:  Okay.

THE CLERK:  Okay?  And if you need to, unmute it only when spoken to, if the judge asks you to speak.  Okay?

MS. DURYEA:  Okay.

THE CLERK:  Thank you.

THE COURT:  All right.  So that was -- the barking dog was him, Jen?

THE CLERK:  Yes, I'm pretty sure it came from Ms. Duryea's, yes.

THE COURT:  All right.  So I know there are several

pending motions that have been referred to the magistrate judge.  I -- I wanted this conference to look at this at somewhat of a higher level.  I want to figure out what needs to be done to get this case ready for trial or to finish any motion practice that needs to be finished.  So let's approach it that way.

But, Mr. Justice, let me start with you.  You are no longer in custody.  How long have you been out of custody?

MR. JUSTICE:  I believe, your Honor, since June 27th of 2022.

THE COURT:  Okay.  And how are you doing?

MR. JUSTICE:  I'm doing great.

THE COURT:  Great.  Well, that's good -- that's good to hear.

Are you at a point where when I hold subsequent hearings that you can make it to the courthouse in Concord?

MR. JUSTICE:  Oh, sure.

THE COURT:  Okay.  Good.  So we'll -- we'll try to do all of the other hearings from now on at the courthouse since you can make it there, and I know Mr. Kenison-Marvin can find his way down from the Attorney General's Office.  So we'll do all the hearings from now on in court.

Mr. Kenison-Marvin, let me turn to you and ask you to quickly summarize for me what discovery has occurred so far in this case.

MR. KENISON-MARVIN:  Yes, your Honor.

So I need to off the bat acknowledge that my appearance was filed, I believe, at the end of February and I know there's motions to compel discovery answers.  I have dropped the ball in responding to anything that was my responsibility to respond to.

I -- I became aware last week of the motion to compel being filed and was going to file a response to that.  You had issued your order about no further filings pending the status conference, so I'm here today.

I have not worked this case as I should have been -- I'm responsible for since the end of February due to my own oversights and my colleague, who'd been involved in this case, has been busy, extraordinarily busy, with a large civil trial, David Meehan vs. DCYF.  And so I -- I am -- I cannot provide a superbly responsive answer to the Court's question off the top of my head.

THE COURT:  Well, let me -- let me say at the outset, it's a lot easier for me to deal with somebody who admits they've made a mistake.  At least we can acknowledge that.  Whatever consequences follow from that, we'll deal with.  But it's important to simply acknowledge that you haven't been as diligent as you should have been.

So rather than focus on failures in the past, I'm more interested, again, at this high level of analysis

generally what discovery has been done.  I'll let Mr. Justice respond from his perspective, what remains to be done.

Then I want to ask you, Mr. Kenison-Marvin, are you planning on moving -- filing any further dispositive motions? If not, I want to try to figure out when I can set a trial date in this case.  It's a -- an old case and it needs to be resolved and I want to do whatever it takes to get it to be resolved.

So let's start with a high-level take on discovery. Understanding that you're relatively new in the case, what do you understand has occurred to date with respect to discovery?

MR. KENISON-MARVIN:  I understand there are pending motions with respect to disputes about production of documents and interrogatory answers.  I do note also, I believe, that -- and this was going into the category of things I probably have dropped the ball on.

The Court -- I noticed this morning in beginning to prepare for this that the Court had issued an order, I believe in the middle of March, with respect to a new defendant, substituting in Mr. Carver for another -- for Benjamyn Carver. So there's obviously outstanding discovery as to that defendant that would be new to the case for which no discovery has occurred.

That is -- I can get -- I'll stop there, if the Court would like to ask --

THE COURT:  Yeah.  So let me -- let me ask you, do you routinely represent the Department of Corrections in these kinds of matters?

MR. KENISON-MARVIN:  I -- I -- I have done quite a bit of it in my time here, yes.

THE COURT:  So it's my understanding that there are policies and procedures that govern the use of pepper spray, that govern the use of Tasers, that govern the use of restraints, and at least with respect to some of those activities, they require approval; people aren't just walking around with the -- at the -- correctional officers aren't walking around with pepper spray and Tasers.  They've got to get supervisory approval.  There's usually a team of people involved.  There's usually videotaping of what occurred.

Do you know -- have you looked at these particular incidents to determine what available evidence there is about what actually happened during each of those incidents?

MR. KENISON-MARVIN:  I -- I personally have not, no.

THE COURT:  Okay.  Well, that's a priority matter. Okay?  So we've got to --

MR. KENISON-MARVIN:  Yes.

THE COURT:  The -- there are a number -- the plaintiff has a number of claims, but at the core, his -- I would call his core claims, as I see it, there were several instances where he claims he was tased or subject to --

subjected to pepper spray.  Other -- some of those occasions, he was placed in restraints.  He alleges that there was excessive force used on him on multiple occasions.  And those I would consider the core claims.  And in order to make sense of those claims, we need to be sure that he has all of the available discovery.

And to the extent there are any videotapes that were made of any of these incidents, we've got to get copies of those to him right away.  We need to produce the -- all the prison records with respect to each of those incidents because they're not going to occur without documentation.  There are going to be interviews, investigations, reports.  All of those needs to be collected, packaged up in an organized way.  If they haven't been provided, they should be provided forthwith to the plaintiff so that he can begin to evaluate his particular case.

So let's start with that and then we'll see where we go from there.  And, again, this is without prejudice to any of Mr. Justice's motions which are pending before the magistrate judge.  I -- I don't want to try to adjudicate those unless there's agreement on some things.  Today I'd rather try to get us on a track to resolution.

So that's one of the things I think you should be able to assign a priority to is collecting all of the discovery, whether it's subject to an outstanding discovery

request or not.  You know what the records are about each of those incidents and you should be able to find them, have copies made, and produce them in an orderly way to the plaintiff if you haven't already done so.  And if you've already done so, you should be able to document that fact and make him aware of -- of that.

Mr. Justice, let me turn to you and say, what discovery have you received from the defendant, if any, at this point?

MR. JUSTICE:  As far as I know, your Honor, I haven't received anything.

THE COURT:  Okay.  All right.  So we've got to get you your discovery and get it to you relatively quickly.  So I think that's a first step in this matter.

Mr. Justice, let me ask you about -- I understand the magistrate judge has made extensive but unsuccessful efforts to find an attorney to represent you.  This is a fairly complicated matter even for a lawyer to deal with.  I can't force somebody to take on your case and we've tried to find a lawyer for you.

Have you done anything to try to find a lawyer to represent you in this matter?

MR. JUSTICE:  Well, I -- I called -- this is years, decades, actually, I've been trying to get an attorney to represent me against this conspiracy against me and I have had

no luck.  I mean, there's no lawyer in New Hampshire that wants to take -- wants to take my case.  They give me excuses, all kinds of excuses.

I did find two attorneys that were willing to do it.  According to what my adviser Wanda Duryea told me, one of the attorneys also told her that she -- that he would take the case.  His name, I believe, was McDaniel.  And he said that he would take the case for 20,000.

And then we found another one closer by.  Her name is Zakre.  She said she would take the case and she would take it for 20,000.  But she told me that she first wants to see the discovery, wants to review the discovery.  So she wants -- she's putting the onus on me to provide her with the discovery, which I haven't gotten yet.

THE COURT:  Okay.  Well, maybe I can help you with that part at least and that is I can impose a burden on Mr. Marvin -- Kenison-Marvin to put this discovery together in a clear package with the materials identifiable, segregable by incident, so that you can get it in a relatively clear package.

If you choose to, you can show that discovery material to a lawyer that might be interested in representing you and perhaps you can find somebody who's willing to do it.  I really think you -- I think you would be better off if we could get you a lawyer, but I can't force people to take your case.  And if you can't get a lawyer, I'm just going to have to

have you do the best you can to put on -- gather your evidence and prepare for trial. But -- because we've already really tried extensively, as you have, to get a lawyer.

So as a first step, let's get Mr. Kenison-Marvin to give you that discovery. And that -- that won't be all the discovery, but it will be some of the most important pieces of information. And after you get that, you can ask a -- the lawyer that might take your case to review it and let you know whether he or she is willing to take your case.

And then if -- once you've had a chance to review that material, we can schedule another meeting -- either with your lawyer, if you have one, or without one if you can't get one -- and sort of figure out what our next step would be. I think the next step would be after you get this voluntary discovery or this discovery that I'm telling Mr. Kenison-Marvin he's got to produce, then you can make any specific, targeted additional requests.

If you think there are records out there that he hasn't provided you that bear on the specific claims you're making, you can make a -- a formal request for documents to him. You can identify people you want to depose. You could try to depose those people. You may want to consider whether you're going to try to hire experts. We're going to have to set a deadline for doing that.

And so I think that's how we would proceed. And I

think as a first step, I definitely think we ought to get you that discovery. You can meet with the person who might want to represent you, see if you can get them to represent you, and then after you've done that, we can have another conference and see what our next steps would be.

Rather than put you to the burden of continuing to file a bunch of motions, I think we probably ought to have meetings maybe once a month where you can just come in and tell me, here's what I've gotten, here's what else I want, here's where I am in trying to get a lawyer, and we can just sort of monitor things that way on a monthly basis until we get all the discovery done.

And then I need to -- we'll need to hear from Mr. Kenison-Marvin. I -- if he acts the way the Attorney General Office's usually acts in these cases, the next step for him after the discovery is produced and he gets the discovery he needs is that there would be -- he's likely to want to file a motion for summary judgment addressing some or all of the claims. You could then respond to that. If those claims survive summary judgment, we could then set a trial, a trial date.

Hopefully you'll have a lawyer by that point, but if you don't, you'll have to proceed to trial on your own.

So that's how I would propose we proceed, Mr. Justice, say, set a time now for Mr. Kenison-Marvin to get

12

you that initial discovery, set a status conference for probably a week or so after that production is made, sort of then figure out where our next steps are, and then just continue to set conferences on a periodic basis to make sure that things are proceeding.

I just don't want there to be any dropping of the ball here anymore.  I want -- I'll be monitoring this case month to month.  I expect the defendant to assign it a priority.  And I know how busy that office is, but it is what it is.  You just have to do what I need you to do.

So that's what I propose to do.  How does that sound to you, Mr. Justice?

MR. JUSTICE:  That sounds fair.

THE COURT:  Okay.  I'll work on that plan.

Mr. Kenison-Marvin, now, tell me -- again, you know, what I -- there are several claims here.  I've identified what I think of as the core claims.  There's also a -- certain claims that have been identified by the magistrate judge that are kind of more systemic-type claims, like being in close to solitary confinement for a significant period of time, being housed at the SPU rather than the New Hampshire Hospital.  Most claims are not as clear-cut what discovery that would be needed with respect to those claims.  Certainly his records about when he was in -- at SPU and when he got to New Hampshire Hospital, when he was in close to solitary confinement for however long

periods those were, so those kind of prison records should probably be produced to him as well.

But the main claim is to collect all of the witness statements, any videotapes, anything extant of any investigations of any of the uses of force that are identified in the complaint, order them by incident so that they can be easily reviewed by the plaintiff, put them in a box or whatever and arrange to deliver them to Mr. Justice.

How long do you think it would take you to do that and put that information together?

MR. KENISON-MARVIN:  I am unmuted, correct?

THE COURT:  Yeah, I hear you now.

MR. KENISON-MARVIN:  Okay.  Great.  I won't -- I always promise more -- overpromise and underdeliver, so I'm fighting that urge to say give me 10 days.

THE COURT:  No, no.  You -- it'll take you 30 days to do it.

MR. KENISON-MARVIN:  I'm going to ask for 30.  I wanted to ask -- I wanted to convince myself to ask for fewer, but I think 30 would be --

THE COURT:  You can overdeliver and underpromise in this case.  All right?  So if you can get it together sooner than that, that's great, but let's try to schedule -- I'll ask my -- I'll orally order you to make voluntary -- well, I'm ordering you, you're not doing it through ordinary discovery

process.  I'm ordering you to produce that discovery material to the plaintiff within 30 days.  Have it Bates-stamped, have it organized, produce it to the plaintiff within 30 days, and then I'd ask the clerk to schedule a -- about a week later to schedule a second status conference.  If you can produce it sooner, that's great.

And then we'll check back in with Mr. Justice, find out what he's done with respect to finding an attorney, check in with him on what, if anything, he wants in terms of additional discovery beyond what you've produced, and certainly I'll allow you to do some discovery of the plaintiff, but I think the most important thing as a starting point is to get him the materials he's entitled to to be able to evaluate his case and perhaps be able to retain a lawyer.  So we'll start with that.

At the next conference, Mr. Kenison-Marvin, if you can identify any discovery you would like to take from the plaintiff, you can talk to me about it at the next conference. And I -- I think that's the way we ought to proceed in this case.  We'll just -- just on about a month-by-month basis, we'll just do conferences.  That'll force the parties to pay attention to the case, keep it moving, and we'll -- we'll try to set additional deadlines as we move along.

I will say, although I did not intend to address the -- the matters referred to the magistrate judge, we may be

able to clean up a few of these matters.

And that is I -- Mr. Justice, if you're not prepared to address this, that's fine, but there's a -- a motion pending to substitute Mark Kimball.  Can you tell me what that motion is about?

MR. JUSTICE:  Mark Kimball.  I believe his name is Page Kimball.

You know who would know about this?  My adviser.  She would know about this.

THE COURT:  All right.  Let me -- let me ask --

MR. JUSTICE:  She's my -- Wanda Duryea, you can ask her.

THE COURT:  Let me ask your guardian.

Can you tell me what that -- that motion is about?  If I can clear it up quickly now, I will try and do that.  You can unmute and talk to me.

MS. DURYEA:  Yes.  Yes, your Honor.

When we originally filed the paperwork, I believe it's that they're both sergeants or both lieutenants and they only wear their badge with their last name.  So we had given you the wrong name.  Page Kimball would be the correct name.

THE COURT:  All right.  So that would be -- 91 is motion to amend for substitution of FNU Kimball for defendant Mark Kimball and 92 is a motion to correct -- correction of defendant Kimball's name.  Both of those motions are just

simply trying to get the correct first and last name of Kimball; is that what you're trying to do?

MS. DURYEA:  Yes, your Honor.

THE COURT:  All right.  So, Mr. Kenison-Marvin, in addition to what I've asked to you do, I want you to meet and confer with the plaintiff's guardian and I want you investigate this matter and reasonably agree to whatever amendment is required to make sure we have the correct name of the defendant that the plaintiff wants to sue.  You can then file a short notice to the Court that the parties have resolved those motions and they can be denied without prejudice as moot because they've been resolved by agreement.

Is that acceptable to you, Mr. Kenison-Marvin?

MR. KENISON-MARVIN:  I think so, with the qualification that I've got to study the record.  I'm not sure if this would require bringing a new person in for which the AG's office is not presently -- doesn't have authority to represent.  So that might throw one little hiccup into a -- just procedurally needing us to tie up some loose ends.  I'm not sure if that's necessary, but it seems like something that might be under these circumstances, if it's --

THE COURT:  Okay.  So you certainly have the right to come back to me and say now that I've investigated the matter, this Kimball guy is not somebody we can represent, so I can't agree to any actions on his behalf.

I -- you don't know whether -- you haven't entered an appearance yet for Kimball; is that -- do you know?

MR. KENISON-MARVIN:  I -- I could -- I could look. I am not the fastest at navigating my system.

THE COURT:  No, that's all right.  I won't take the time on it now.  I will tell you to investigate the matter, meet and confer with the plaintiff's guardian with respect to this issue, and file a -- within seven days, file a status report regarding the dispositions of documents numbers 91 and 92 and associated documents to those.  Those are the plaintiff's motions with respect to Kimball.

If you can reach agreement, notify me as to the agreement.  If you aren't able to reach an agreement, explain why you aren't able to reach an agreement.  A short document. I'll then transmit that to the magistrate judge and ask her to -- if it hasn't been resolved, to resolve it.  If you do resolve it and notify me, we'll just deny those as moot because you've resolved them by agreement.

MR. KENISON-MARVIN:  Uh-huh.

THE COURT:  There's a -- maybe the plaintiff's guardian can address this issue.

There's a motion to prevent placing civilly; do you know what that motion is about, injunction to prevent placing civilly?

MS. DURYEA:  Yes, sir.  And I'm sorry; my dryer is

going off.

THE COURT:  That's all right.

MS. DURYEA:  When they had denied the injunction saying it's moot because he's out, he didn't object at that point because he believed that they would remove the CD from him, which is the conditional discharge.  However, the state has reupped that conditional discharge and, as such, Mr. Justice is subject to being readmitted to the Secure Psychiatric Unit at any point.  So he's asking that since he has never been convicted that it be ruled that he cannot be civilly committed to the Secure Psychiatric Unit.

THE COURT:  All right.  This is not an issue that I can recall confronting in the last 30 or 40 years that I've been doing this, so you'll have to excuse my ignorance.  I have not looked at the motions.

You're telling me that he has -- you are asserting on his behalf that it is unconstitutional to leave him in conditional discharge status; is that your position?

MS. DURYEA:  No, your Honor.

THE COURT:  All right.

MS. DURYEA:  We're asserting that it's unconditional to put him within the confines of the Secure Psychiatric Unit on the grounds of the state prison because he has never been convicted.

THE COURT:  He's not in -- he's not at the state

prison now, is he?

MS. DURYEA: No, he is not, but he is on a conditional discharge, and if they revoke that conditional discharge, they can place him in the Secure Psychiatric Unit.

THE COURT: And you're --

MS. DURYEA: And they did try to revoke that last year.

THE COURT: Yeah. You're asking then for an injunction to prevent them from acting on the conditional discharge? I'm confused --

MS. DURYEA: In the manner of -- in the manner of putting him in the Secure Psychiatric Unit. If they admit him to the hospital, there's no constitutional issue.

THE COURT: All right. Well, why -- why should I rule on that -- what is the reason -- it's hard for me to understand. Let me try to separate this out.

MS. DURYEA: Okay. Let me try to explain.

THE COURT: Wait. Wait.

MS. DURYEA: Because the condition --

THE COURT: Wait. Wait. Wait. Okay. So I -- you've got to help me, because I'm making the decisions here. So if I ask you to stop, just do that. I'll certainly give you any time you need to say anything you want to say, but I'm trying to understand.

Is this a separate claim for relief that you have a

legal theory that entitles you to the injunction you're seeking in document number 98?  Just yes or no on that.

MS. DURYEA:  I believe so, yes.

THE COURT:  All right.  And can you identify what the legal theory is, like Fourteenth Amendment due process, Eighth Amendment cruel and unusual punishment, statutory ground, whatever it is; what is the --

MS. DURYEA:  The --

THE COURT:  -- ground?

MS. DURYEA:  At least Eighth Amendment and Fourteenth Amendment, yes, your Honor.

THE COURT:  Okay.  And can you explain what conditional discharge status is under state law?

MS. DURYEA:  Okay.  It's under -- I believe it's 135-C and it requires him to follow conditions or have his discharge revoked.

THE COURT:  Okay.  And are you saying that that state statute is unconstitutional?

MS. DURYEA:  I -- I don't believe that the conditional discharge statute is unconstitutional.  I believe it's unconstitutional to place him within the Secure Psychiatric Unit with convicted individuals without being convicted.

THE COURT:  All right.  So let me speak back to you to see if I have your argument.

You're not challenging the constitutionality of the conditional discharge statute. You are arguing that to the extent that the authority to detain him at the Secure Psychiatric Unit is based on his conditional discharge status, it would be unconstitutional to exercise that power to have him held at the Secure Psychiatric Unit.

Is that what you're saying?

MS. DURYEA: Perfect, your Honor.

THE COURT: Okay. All right. And that relates to a -- another -- you do have a claim -- your client -- your -- excuse me.

The person you are guardian for has a claim in general that he can't be housed at the Secure Psychiatric Unit because he has not been found guilty of a crime and it is unconstitutional to place someone civilly comitted to -- at this -- the Secure Psychiatric Unit. Is that one of the claims you understand your client -- the person you're guardian for is making?

MS. DURYEA: Yes, your Honor. And, by the way, I'm no longer his guardian, but I'm acting just to assist him.

THE COURT: Okay. You're not a lawyer?

MS. DURYEA: No, sir.

THE COURT: Okay. So you're just a nonlawyer assistant; is that -- have I got that right?

MS. DURYEA: Yes, sir.

THE COURT:  Okay.  Not a --

MS. DURYEA:  Yes, sir.

THE COURT:  -- guardian anymore.  Okay.

And you understand him to -- one of the things that he's saying is to -- he was found not guilty by reason of insanity, was he; is that --

MS. DURYEA:  No.  No, your Honor.  He was found incompetent to stand.

THE COURT:  He was found not competent to stand trial, he was civilly committed, and he was released on a conditional discharge.  Under the state law, if he violates the terms of that discharge, he could be taken into custody again and if he's taken into custody again, you're afraid he'll be housed at the Secure Psychiatric Unit.  Is that right?

MS. DURYEA:  Yes, your Honor.

THE COURT:  And you're afraid that -- and if he did -- and if that were to happen, that would violate his constitutional rights.  Is that your position?

MS. DURYEA:  Yes, your Honor.

THE COURT:  Okay.

MS. DURYEA:  Yes, your Honor.

THE COURT:  Mr. Kenison-Marvin, do you -- are you claiming that your client has the right, if he violates conditional discharge, to house him at the Secure Psychiatric Unit rather than the New Hampshire Hospital?

MR. KENISON-MARVIN:  I think that would be a -- something that would -- would be under contemplation under certain circumstances.  I don't think that's necessarily the only thing that would happen and the only consideration that would be being made; that there could be alternatives, which I think in addition I know we filed an objection, Document 104, to the motion for preliminary -- or motion for injunctive relief.  But for that -- for the reason that it's that -- I -- that I just said, with respect to it being one of a possibility of things, I think, for the --

THE COURT:  That's what I'm trying -- I'm getting at.  You don't normally get injunctions to prevent something that you're not confident is ever going to happen and so I'm trying to figure out whether there's some practical way that we can give Mr. Justice some assurance that he won't just be arbitrarily scooped up and sent to the Secure Psychiatric Unit without having an opportunity to address the Court first, at which point he could press his claim for injunction then.

There are significant problems with granting him an injunction against a hypothetical event that may or may not occur and it's simply not a good use of judicial resources to address a claim like that unless you are -- if someone can show me there's a real risk of that happening.

He's been out since 2022.  He's doing great, according to him.

24

MS. DURYEA:  Your Honor --

THE COURT:  Yes.  Yes?

MS. DURYEA:  Your Honor, we --

THE COURT:  Yes.

MS. DURYEA:  We had to file -- we had to file a habeas last year because he missed a doctor's appointment and they scooped him up and deposited him in the Concord Hospital pending --

THE COURT:  And did he go to the Secure Psychiatric Unit?

MS. DURYEA:  We -- we didn't know where he was going to go and at that point I was not his guardian and I'm not here to protect him.

THE COURT:  Yeah, I -- I don't -- he has a case pending here.  If he wants -- if someone scoops him up and takes him to the Secure Psychiatric Unit, I assume the first thing that would happen is he would file a motion seeking a hearing in front of me and we could figure out what to do on it.

But I -- I'm not going to address this motion now.  I'll leave it with the magistrate judge to prepare a report and recommendation on it.  I was hoping that I could find a quick way to give Mr. Justice some assurance that he wouldn't be put at the Secure Psychiatric Unit.

I have no idea regarding the merits of an argument

or an injunction to someone who's not currently in the Secure Psychiatric Unit as to whether he should get an injunction preventing someone from putting him at the Secure Psychiatric Unit.  That is just not something in the 32 years I've been on the court that I've been asked to deal with before.  So I'll have to wait until the magistrate judge acts on that particular motion.  I was hoping I could get it resolved expeditiously.

Document number 99, Motion to Compel Defendant Hanks to Answer Interrogatories, I'm going to suggest, Mr. Justice, that what we do with respect to that motion is deny it without prejudice.  Let's see what we can get out of Mr. Kenison-Marvin within the next couple of weeks.  And then if you need to renew that motion, I'll let you renew it and deal exactly with whatever it is he's not doing.  Because I'll make sure he gets you whatever it is you're entitled to by way of discovery through these periodic meetings.  I just think that's going to be an easier way for you than to have to be filing a bunch of motions as a *pro se* person.  You can just tell me in your own words what you're not getting that you think you're entitled to.  So I propose we deny that without prejudice.

Mr. Justice, how do you feel about that, if I allow you to reinstate it after our next meeting if you're not getting what you need.

MR. JUSTICE:  I agree with you, your Honor.

THE COURT:  Okay.  Let's -- let's go ahead and do

that.  So that motion is denied without prejudice.

Jen, if you could enter that.  I just want to simplify, to the extent possible, the magistrate judge's task.  So document number 99 is denied without prejudice.

The motion to retain cell phone within the courthouse -- so when you come in for hearings, you want to bring your cell phone, Mr. Justice; is that right?

MR. JUSTICE:  And also my -- my adviser, because she has information on the cell phone that she can use during court.

THE COURT:  All right.  I -- I -- I'm not currently mindful of whatever our policy is.

Does my case manager -- do you have on the top of your mind what the courthouse policy is with respect to cell phones by lawyers?

THE CLERK:  Yes.  So if you're member of the Bar, you can bring in a laptop and a cell phone, but *pro se* parties at this juncture are not allowed to bring in -- or people who come to just see a hearing and sit in the public section -- are not allowed to have an electronic device.

THE COURT:  Right.  And so I -- I want, if -- if -- Mr. Justice, if you want to bring in a cell phone for a specific hearing because you might need it, I will -- you can notify the case manager in advance and she will bring it to my attention.  And unless I have some objection, I will make

arrangements for you to be able to bring your cell phone in or a laptop for yourself.

As to your nonlawyer assistant, I'm really not in a position to make exceptions to those rules. If there are specific matters that you need to bring to help Mr. Justice, I'm going to be somewhat liberal. I'm cautious about having nonlawyers representing people. When you were his guardian, I would have viewed this matter in a very different light, but as you're no longer a guardian, there's not as much -- I don't have much flexibility.

So I'm going to grant the motion. What document --

MS. DURYEA: Your Honor --

THE COURT: Yes, go ahead. Sorry, sir. Go ahead.

MS. DURYEA: Your Honor, I can provide my laptop to him and, therefore, he would have everything that we're using to create the case.

THE COURT: All right. I -- I don't have a problem with that if Mr. Justice calls in advance and says he needs it. Call and ask to speak to my case manager, say you're seeking permission to bring a laptop in. I will grant it.

Mr. Justice, I just need to advise you that there's no recording of anything that happens in the courtroom. We have a -- a court reporter who will be transcribing everything that's said, but we don't allow anyone to use a computer or a phone to make recordings of any proceedings.

Will you abide by that policy?

MR. JUSTICE: Yes, I will.

THE COURT: All right. Then if you need your -- your adviser's laptop and she's willing to give it to you, then you -- for that purpose and you arrange in advance each time with the case manager, she will consult with me. Assuming I don't have a problem with it, I'll ask her to make an exception and inform the court security officers. And that's all you would be allowed, is just to bring in a laptop or your personal cell phone if you need it for the hearing. But no recording of anything that happens. If you were to do that, you'd be in contempt of court. I'm sure you won't do it.

So that motion can be granted in part and denied in part as I've described. With advance permission from the case manager, the defendant shall -- excuse me -- the plaintiff shall be able to bring in a -- one personal laptop provided by his adviser and/or his personal cell phone to the extent it's necessary to represent himself at the hearing.

Hopefully, if we can get you a lawyer, then we can just follow the ordinary practices there.

Okay. So that's -- that's disposed of 100.

With respect to the interrogatory responses, 110, I'm proposing that we deal with that in the same way, deny those without prejudice. I want to get on this track of me monitoring discovery month to month and staying on

Mr. Kenison-Marvin so that he knows -- I know when he has to meet with me on a regular basis, he -- he tries hard not to get in trouble. So I think he will -- I think he will be more responsive with those monthly meetings.

So I would propose we deny that, again, without prejudice, and to the extent you want to renew a more targeted set after you get all this discovery -- and if you have a lawyer, it would be without prejudice to your lawyer seeking to serve interrogatory responses. I would propose denying that without prejudice.

Do you have any problem with that, Mr. Justice?

MR. JUSTICE: No, I don't, your Honor.

THE COURT: Okay. Good. Well, we'll go with that.

So I think then that leaves the only -- only motion outstanding that I'm going to ask the magistrate judge to take a hard look at is the motion for injunction to prevent civilly committed to SPU. That is -- that would be a preliminary injunction, I assume.

The permanent injunction, to the extent you're seeking it, would be a form of equitable relief you would be entitled to at the conclusion of the case under the existing claims that you've brought, one of which is it's unconstitutional to confine me at the SPU rather than New Hampshire Hospital.

So that will remain pending and I'll make the

magistrate judge aware that we've resolved the other issues or that I'll take over the one with respect to Kimball if it isn't -- if it isn't resolved.  And then the others are denied without prejudice and that should take care of the pending motions.

So, to me, the priorities are getting Mr. Justice as much discovery as we can get him, giving Mr. Justice a chance to take that discovery to a lawyer and see if he can interest a lawyer in handling the case.

Mr. Justice, if you were to have a lawyer and prevail in a case like this, some of the claims would entitle you to attorney's fees as a prevailing party and that might be of interest to a lawyer that you'd be asking to handle the case.

So you should get that discovery, go see this lawyer, remind them that if you prevail in the case, there might be the ability to recover some attorney's fees as a prevailing party.  So that might entice the lawyer.

But we'll find out whether you can get a lawyer or not and I'll keep this case on track.  I promise you, I'm going to do regular meetings here.  We'll keep pushing the discovery along.  I want to get this case to a point where there are really three outcomes:  Either a dispositive motion is filed and the case is dismissed in whole or in part on summary judgment, the case is settled, or there's a trial.  And I don't

care which of those three it is, but it's going to be one of those three and I'm going to get it on track so we can move this case to resolution.

Mr. Justice, before we end the call, is there anything else you wanted to -- that you wanted to say to me or anything else you'd like to raise?

MR. JUSTICE:  Yeah, your Honor.  Approximately, did you -- approximately how many attorneys did you try to find for me in your quest for trying to find me a lawyer?

THE COURT:  I would say I did zero, but I was informed -- one of the things I asked as soon as I looked at the pending motion to dismiss was did -- did anyone try to find you an attorney.  And I don't -- the magistrate judge and the -- I think possibly the clerk's office were involved in that effort.  I was not.  So I don't know how many.  So I can't answer your question.  But I can tell you I was informed that there were significant efforts made to find you an attorney who would take your case for free.

I assume you've gone to organizations like the ACLU and other organizations that are civil rights organizations, but we made some efforts through the magistrate judge or the clerk's office and they were unsuccessful.

MR. JUSTICE:  I understand.  Thank you very much for answering my question as best you can.

THE COURT:  Okay.  Good.

Let me ask your adviser, is there anything else you want to take up today on behalf of -- understanding you're not representing him --

MS. DURYEA:  Right.

THE COURT:  -- you're not legally entitled to do that, but just -- is there anything else you want to draw to my attention about matters we should be thinking about for Mr. Justice?

MS. DURYEA:  Attorney Denny --

THE COURT:  What about Attorney Denny?

MS. DURYEA:  -- has not withdrawn.  She has not withdrawn.

THE COURT:  Okay.  Remind me, because I wasn't involved in the case at that point.

There's an attorney who has already entered an appearance for Mr. Justice but has -- and has not --

MS. DURYEA:  No, no, no.  For the state.

THE COURT:  Okay.  So there's another --

MS. DURYEA:  And she's the one -- she's the one that was provided the discovery requests and the interrogatory requests.

THE COURT:  Okay.  And, Mr. Kenison-Marvin, is that the attorney that was involved in that lengthy trial that you were talking about?

MR. KENISON-MARVIN:  Yes.  And it was my

responsibility while she was involved to be the person managing this matter and that's what I was describing as having dropped the ball on.

THE COURT:  All right.  Dropped the ball.  So you acknowledge you did not comply.  The principal attorney was involved in -- was that a trial that -- it was relatively recently concluded the YDC?

MR. KENISON-MARVIN:  It -- it's at -- the plaintiffs have -- the jury -- it was throughout the month of April.  The verdict came out Friday.  Over the -- it was -- I've seen in reporting that a juror contacted plaintiffs' counsel, who contacted -- about jury misunderstanding jury forms.  The plaintiffs have contacted the superior court judge for an emergency hearing.  So it's an ongoing, developing situation.

THE COURT:  All right.  And so you're going to be the person I'm going to hold responsible --

MR. KENISON-MARVIN:  Yup.

THE COURT:  -- for this case going forward.  Okay?

MR. KENISON-MARVIN:  Okay.

THE COURT:  Because it sounds like your cocounsel is otherwise occupied.

I recognize that there is -- the Attorney General's Office dropped the ball here.  I'm not -- I mean, if Mr. Justice thinks there's some basis to seek sanctions, then he's welcome to try to do that.  I just want to get him the

discovery.  That's the important thing right now for me.

MS. DURYEA:  Right.  I just think it's important that --

THE COURT:  Right now -- go ahead.

MS. DURYEA:  -- he either serves one or two attorneys with documents.

THE COURT:  Oh.  From now on, Mr. Justice, you should -- any matters you need to address with the Attorney General's Office, you should address them to Mr. Kenison-Marvin.  Even though the other attorney has not withdrawn from the case, he's the principal attorney on the matter.  If you send it to the wrong person, then who knows what happens at the AG's office under those circumstances.  And so you want to send something to Mr. Kenison-Marvin.

And you should -- you two should talk by phone as well about this issue with Mr. Kimball.  I want to get that taken care of.

So you should -- Mr. Kenison-Marvin, do you have Mr. Justice's contact information?

MR. KENISON-MARVIN:  I likely -- I likely do.  I --

THE COURT:  All right.  I just -- I -- I want --

MR. JUSTICE:  I don't have his, your Honor.

THE COURT:  Pardon me?

MR. JUSTICE:  I don't have his.  I don't have his.

THE COURT:  Okay.  Here's what I'm going to do.

Okay?

There was a member of the public on the call, still is, I believe. After we conclude this conference, I'm going to have the clerk place the two of you in a -- a breakout room and I want you to exchange contact information. And then you can both just hang up and that'll terminate the call. But I don't want any member of the public to get either of your contact information, so that should be done without any member of the public on the call. It doesn't need to be on the record either.

All right? So just every -- you, Mr. Kenison-Marvin, and you, Mr. Justice, just hang on and we'll move you into a breakout room in a second.

Mr. Kenison-Marvin, is there anything else you need -- that you wanted to talk about in this matter?

MR. KENISON-MARVIN: I -- I had two things.

I think we just resolved the first one when we were talking about the situation involving defendant Kimball. Initially you'd asked me to meet and confer with Mr. Justice's adviser. Having learned -- I think we've just taken care of that. I will get his contact info. And I won't work that issue through Wanda Duryea --

THE COURT: Okay.

MR. KENISON-MARVIN: -- I'll work that issue directly through correspondence with him.

THE COURT:  Yeah.  I thought the adviser was still a guardian, in which case it would have been appropriate.  But given that it's just a nonlawyer adviser, we -- and I'm not diminishing it; it's just that there's different status and the Court has to deal with the person in a different way.

So Mr. Justice is free to talk to his adviser afterwards, but I don't think you need --

MR. JUSTICE:  Can I still --

THE COURT:  I'm sorry.

MR. JUSTICE:  Your Honor, when I contact Attorney Kenison-Marvin --

THE COURT:  Yes.

MR. JUSTICE:  -- can I have my guardian -- my adviser, as you say, with me so we can discuss it in a three-way conversation?  Because she makes a very good point that I forget to make --

THE COURT:  Yeah, I'll --

MR. JUSTICE:  -- because she has more legal --

THE COURT:  We'll take it on an ongoing basis.  If there is a -- it's very important that when someone is not a lawyer or a guardian that -- that they don't make the decisions.  You make the decisions, Mr. Justice.  To the extent you want that person just to be there with you, that you can talk to, as long as they're not the one making the decisions, that's fine.  Because you don't have a guardian now and you

don't have a lawyer yet --

MR. JUSTICE:  Yes.

THE COURT:  -- and so you have to make the decisions.  You can get advice, but they don't make it for you.  And I -- I just need to really emphasize that.  And I -- I reserve the right to change this status if it becomes nonproductive.  But I don't, in principle, have an objection to you having your adviser with you on the phone when you speak to Mr. Kenison-Marvin.  If it becomes a problem, the parties will notify me.  And I don't object to your adviser being present in court during our subsequent conferences.

At least to the extent that it's just the Court and not a jury, I'll allow your adviser to sit with you at counsel table.  Again, they're not a lawyer; they can't make decisions for you.  I'll be addressing you during the hearing.  But if it's just convenient to have your adviser sit with you at counsel table, I'll allow that, assuming it doesn't become a problem for meetings with the Court.  Meetings with a jury are a different matter.  I'm not inclined to allow a nonlawyer to sit at counsel table in front of a jury.

But I want to try to accommodate you, if I can, so for the -- at least for the time being, your adviser can sit with you at counsel table at subsequent hearings, can be on the phone with you when you talk to Mr. Kenison-Marvin, but you're calling the shots, not your adviser.

Do you understand, Mr. Justice?

MR. JUSTICE:  Yes, sir.

THE COURT:  Okay.  Good.

MR. KENISON-MARVIN:  I --

THE COURT:  Mr. Kenison-Marvin, what else?

MR. KENISON-MARVIN:  I just wanted to clarify.  I've looked at my appearance with -- this is with respect to the Kimball defendant as well.  I did not appear on behalf of any Kimball -- person named Kimball.

So I think if a new defendant is being added, we wouldn't -- we won't object to any -- any request that that be done, but we will need to -- typically it would go through the -- the order issued from the Court pursuant to the agreement on acceptance of service for us to reach out to that individual and get their authorization, to inform them of their rights to be represented and then find out whether or not they authorize us to represent them or not.  So that's a process that we'll need to undergo.

THE COURT:  So this defendant Kimball is not a named defendant at this point; it's a new defendant, you think?

MR. KENISON-MARVIN:  I'm just -- right now I'm looking solely at my appearance and I would have appeared for any defendant that is for the state here.

I've appeared on behalf of Helen Hanks, Paula Mattis, Deborah Robinson, Carlene Ferrier, Frank Logan III,

Joshua Deblois, and Randall Carver, who will be -- Benjamyn Carter is being substituted.

THE COURT:  All right.  Let me stop you and ask my clerk, do you -- is there a Kimball as a named defendant in the --

THE CLERK:  Yes.  There's a -- there's Mark Kimball. And then so I believe Mr. Justice is asking for that Kimball's name to be corrected to be -- I believe they said Page.  And --

THE COURT:  Do you know whether --

THE CLERK:  -- Ms. Denny is -- actually appearing for this Mark Kimball on the docket.

THE COURT:  Oh, okay.  All right.  So you maybe haven't, but Ms. Denny has.  Let's find out if it's somebody you're still representing, the AG's office is representing.  If they are, I expect you to consent to whatever needs to be done.

MR. KENISON-MARVIN:  Yes.

THE COURT:  And if you're not, you'll inform us in a status report and that person will get service, if they haven't had service already, and they'll be instructed that they need to enter an appearance themselves or find counsel if the AG's office is not representing them.

But I suspect you're going to find that they are somebody you are representing and you can just agree to that and agree to any modifications that need to be made.

MR. KENISON-MARVIN:  My fingers are crossed.

THE COURT: Okay. All right.

So, Jen, is there anything else you need me to take up?

THE CLERK: So I believe Mr. Kenison-Marvin just alluded to this. Because they missed the acceptance of service for Benjamyn Carver and so that -- I think you need to give them a specific date by which to accept service and file an answer because those two dates have gone by.

THE COURT: Already gone by. So all right.

So, yeah, I -- I think you can accept service within seven days and file an answer within 20 days thereafter. Is that -- is that acceptable to you, Mr. Kenison-Marvin?

MR. KENISON-MARVIN: Yeah. I have not had contact -- I'm not understanding that anyone in our office has had contact with the intended -- the new named Benjamyn Carver.

THE COURT: Okay.

MR. KENISON-MARVIN: So I will -- I can -- I will do all diligence that I can to make contact with him as soon as possible to find out if he would like to exercise his right to be represented by us and to notify the Court within seven days if he has.

And to the extent that that hasn't been done within seven days, I'll file a notice or a status report with the Court informing them of my efforts and where things stand.

THE COURT: Oh, great. So we'll do that with

respect to Kimball and Carver then.  So it'll basically be a status report that will tell us either the matter's resolved and we can move on or we have an issue that we have to pursue further.

THE CLERK:  And, Judge --

THE COURT:  Yeah.

THE CLERK:  -- one last thing.  There is a trial scheduled in this case.  It's scheduled for a bench trial in November and we have a summary judgment deadline that's beginning of July.  So I don't know if we need to --

THE COURT:  That's not going to be met because --

THE CLERK:  The parties need to redo this, yeah.

THE COURT:  But we'll take it up a step at a time, Jen.  Let's take the matter off the trial list and we'll reset discovery deadlines.  We can start resetting them after the next month and we'll establish a new trial date and a realistic discovery completion deadline as soon as we can after we get this initial production.  I think that's the way to address it.

Okay.  So we made some progress here.  I appreciate the effort.  I appreciate Mr. Kenison-Marvin acknowledging some of his lack of diligence here.  I know he'll be attentive going forward.

I think we have established a plan for the resolution of motions 91 and 92 as well as the issue with respect to Mr. Carver.  We'll get a further status report on

that.

We have denied 99, 100, or not -- 99 and 110 without prejudice. We -- 100 we've granted in part and denied in part.

The defendant can bring in a laptop and/or personal cell phone by seeking advance approval from the Court and the clerk will let the guards know on days when he's allowed to bring something in.

And with respect to the motion for injunction, that's going to remain pending and before the magistrate judge for the time being. I'm going to treat it as a motion for preliminary injunction and we'll see what the magistrate does with it. And if it isn't processed within a reasonable period of time, I'll consider whether to withdraw that case from the magistrate judge and rule on it myself.

All right? So we're marching forward. This is a significant -- these are serious allegations. I want to see them properly investigated. I want to see them pursued. And I want the case put in a posture where it either resolves on summary judgment, settlement, or a trial, hopefully within the relatively near future, but it's just not realistic to think about a fall trial date here.

Clearly there are a number of incidents that need to be investigated. There are depositions that need to be conducted. There may need to be expert testimony -- experts retained. There will likely be a motion for at least partial

summary judgment.  All of those things realistically are -- it's going to be until the spring of next year before we could get a trial date to resolve it.

All right.  I -- Jen, unless there's anything else, I'm going to terminate the call.  All right?

So we'll -- we'll look for you to comply with those deadlines, Mr. Kenison-Marvin.

And, Mr. Justice, after you get the material, send it over to your lawyer, maybe your lawyer, see if that person can be interested in representing you.  If not, we'll have another conference.

Please stay on the line and Mr. -- the clerk will move Mr. Justice and Mr. Kenison-Marvin into a waiting room where they can exchange contact information and I will sign off as that concludes my part of the hearing.

Okay.  Thank you, everyone.

MR. JUSTICE:  Thank you.

MR. KENISON-MARVIN:  Thank you.

(Proceedings concluded at 3:58.)

44

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 6/26/24          */s/  Liza W. Dubois*
                            LIZA W. DUBOIS, RMR, CRR