US DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FILED - USDC -NH
2025 FEB 24 PM3:25

| | |
|---|---|
| William S. Justice f/k/a William Soler Jr., )<br>)<br>) Plaintiff,<br><br>Defendants    )<br>BRET RICHARDSON)<br>KENNETH K. KUM)<br>JONATHAN BOISSELLE)<br>CO RYAN)<br>CO MORISSETTE)<br>SECURE PSYCHIATRIC UNIT ("SPU"))<br>DANIEL POTENZA M.D.)<br>WENDY MARTIN M.D. )<br>PAULA L. MATTIS,         )<br>DEBORAH ROBINSON,    )<br>HELEN E. HANKS,   )<br>Nurse Mark Gagne     )<br>CARLENE FERRIER, RN, )<br>FRANK LOGAN,)<br>SCOTT J. MARSHALL, )<br>JOSHUA N. DEBLOIS       )<br>PAGE H. KIMBALL,        )<br>BENJAMYN CARVER)<br>NATHANIEL P. SEABRON)<br>OFFICE OF PUBLIC GUARDIAN, )<br>ERIC VANGELDER & ERIC HANSMEIER, ) | AMENDED COMPLAINT<br>1-20-cv-00517-PB |

COMPLAINT& REQUEST FOR BENCH TRIAL

NOW COMES Plaintiff William S. Justice, pros and complains and alleges against the Defendants as follows:

JURISDICTION AND PARTIES

1. Plaintiff William S. Justice ("Mr. Justice") is a citizen of the United States, who, at all times relevant to this litigation, resided in Secure Psychiatric Unit, City of Concord, County of Merrimack, and State of New Hampshire.

2. Defendant BRET RICHARDSON is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack,  during all times relevant to this litigation.

Exhibit 1 Involuntary civil commitment-14th Amendment Due process protections

3. Defendant Secure Psychiatric Unit ("SPU") is a State operated Forensic unit, located within the New Hampshire State prison for men, providing psychiatric services to the correction system for inmates and the New Hampshire court system, including care for those committed under the criminal statutes of Incompetent to Stand Trial, and those committed to the State as Not Guilty by Reason of Insanity, located in the City of Concord, County of Merrimack, and State of New Hampshire. New Hampshire Secure Psychiatric Unit ("SPU") is a State Prison unit administered by the Medical and Forensic Services Division of the New Hampshire Department of Corrections.

Exhibit 2 http://indepthnh.org/2018/05/13/a-state-of-contradictions-especially-if-you-are-mentally-ill-in-nh/

Exhibit 3 https://www.insideprison.com/state_federal_prison_details.asp?ID=996

4. Defendant Daniel P. Potenza M.D. is a citizen of the United States and was, the Medical Director of New Hampshire Department of Corrections. As Medical Director

5. Defendant CO BRET RICHARDSON is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation

6. Defendant CO KENNETH K. KUM is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

7. Defendant JONATHAN BOISSELLE is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a PPO, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

8. Defendant CO RYAN is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

9. Defendant CO MORISSETTE is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

10. Defendant Paula L. Mattis is a citizen of the United States and is presently the Director of Medical-Forensic Services of New Hampshire Department of Corrections.

Exhibit 4 http://indepthnh.org/2018/01/26/families-advocates-speak-out-against-the-secure-psychiatric-unit-at-nh-mens-prison/

11. Defendant Deborah Robinson is a citizen of the United States and is presently the Administrator of the Secure Psychiatric Unit, in the City of Concord, County of Merrimack, State of New Hampshire, and was at all relevant times to this litigation an employee of New Hampshire Department of Corrections.

Exhibit 5 http://indepthnh.org/2019/09/03/milan-mans-lawsuit-seeks-release-from-secure-psychiatric-unit-damages/

12. Defendant Helen E. Hanks is a citizen of the United States and was, at all relevant times to this litigation the Commissioner of New Hampshire Department of Corrections.

Exhibit 6 Feds Reveal 'Ongoing Law Enforcement Proceeding' at Secure Psychiatric Unit | InDepthNH.org

13. Defendant Nurse Mark Gagne R.N., is a citizen of the United States and was a Nurse in SPU, at all relevant times an employee of New Hampshire Department of Corrections. .

Exhibit 7 https://www.nhpr.org/post/advocates-call-feds-investigate-mental-health-policies-nh-state-prison

14. Defendant Carlene Ferrier, R.N., is a citizen of the United States and was, Director of Nursing, at all relevant times an employee of New Hampshire Department of Corrections.

15. Defendant Frank Logan is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

16. Defendant Scott J. Marshall is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

17. Defendant Joshua N. Deblois is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

18. Defendant Page H. Kimball is a citizen of the United States and was at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack.

19. Defendant Benjamyn Carver is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections.

20. Defendant Officer Nathaniel P. Seabron is a citizen of the United States and was, at all relevant times an employee of New Hampshire Department of Corrections employed as a Corrections officer, located in the City of Concord, County of Merrimack, during all times relevant to this litigation.

21. Defendant Office of Public Guardian is a private non-profit corporation organized in 1979 to provide guardianship and advocacy services to vulnerable citizens of New Hampshire.

22. Defendant Eric Vangelder is a citizen of the United States, who, upon information and belief was employed as a guardian by the Office of Public Guardian, located in the City of Concord, County of Merrimack, during all times relevant to this litigation. He was appointed guardian to William Justice on July 28, 2018.

23. Defendant Eric Hansmeier is a citizen of the United States, who, upon information and belief was employed as a guardian by the Office of Public Guardian, located in the City of Concord, County of Merrimack, during all times relevant to this litigation. He was appointed subsequently as guardian to William Justice.

Exhibit 8 case # 317-2018-GI-00414
Exhibit 9 317-2018-GI-414_SuccessorCertificateofAppointment
Exhibit 9a 317-2025-GI-0085 CertificateofAppointment

24. This Court has proper jurisdiction over the parties pursuant to 42 U.S.C.§1983, ADA Title II, Rehabilitation Act of 1973 Section 504, the US Constitution Articles 1, 4, 5, and 14 and the Consent Decree.

## FACTS

25.  Since February 12, 2014, the State of New Hampshire has been operating under a Consent Decree and incorporated Settlement Agreement ("Consent Decree") and incorporated herein by reference.

Exhibit 10 https://drcnh.org/wp-content/uploads/2019/01/Notice_Proposed_Settlement.pdf

26. The Consent Decree was grounded in allegations that State of New Hampshire, was failing to provide services to individuals with mental illness in the most integrated setting appropriate to their needs in violation of the ADA, which led to the needless and prolonged institutionalization of individuals with disabilities and placed individuals with disabilities at risk of unnecessary institutionalization.

Exhibit 11 https://drcnh.org/wp-content/uploads/2019/01/DOJ_Complaint_Intervention.pdf

27. The Consent Decree is a contract between The State of New Hampshire and class members, i.e. The Agreement provides relief to several thousand adults within New Hampshire who have serious mental illness and who are institutionalized or at serious risk of institutionalization at New Hampshire Hospital or the Glencliff Home. Those at serious risk of institutionalization include those within the target population who, within the last two years: have been admitted multiple times to New Hampshire Hospital, have used crisis or emergency services for mental health reasons, have had criminal justice involvement as a result of their mental illness, or have been unable to access needed community services.

Exhibit 12 http://indepthnh.org/2018/07/16/state-rep-no-treatment-standards-reviews-for-decades-at-prisons-secure-psychiatric-unit/

28. Due to his diagnosed serious mental illness, Mr. Justice had been committed to New Hampshire Department of Corrections SPU (NH RSA 135:C) since a court finding on February 9, 2018 that he was not competent to stand trial and not restorable for charges of attempted murder, assault, and reckless conduct with dangerous weapon. There are other individuals in similar circumstances that have been civilly committed and sent to New Hampshire Hospital or treated in the community rather than being sent to SPU within the prison. (Tony Heath, Cory Peterson, or James Robinson for example)

Exhibit 13 CASE 317-2018-IN-00027
Exhibit 14 https://www.themarshallproject.org/2018/07/30/sent-to-a-hospital-but-locked-in-prison

29. Mr. Justice is a member of the protected class of individuals, pursuant to the Consent Decree.

30. Upon information and belief, The State of New Hampshire is a Medicaid and/or Medicare participating entity that has accepted federal funds. There are others within the SPU that are not involuntarily secluded for up to 23 hours a day. Upon information and belief, The New Hampshire Department of Corrections was denied certification by the Centers for Medicare and Medicaid Services for reimbursement. The Secure Psychiatric Unit is neither a licensed nor accredited facility, and as such is not subject to any outside survey activity or clinical oversight. SPU is a prison setting not a hospital.

31. On February 18, 2018, Defendant Daniel P. Potenza was the Medical Director of Secure Psychiatric Unit.

Exhibit 15 Heath v Hanks 217-2019-CV-00765
Exhibit 16
https://www.abajournal.com/magazine/article/breakdown_prisons_mental_health_patients/

32. A special relationship existed between Mr. Justice and Defendants because of him being required by law to be in physical custody of the State of New Hampshire Department of Corrections.

33. As a result of the special relationship, Defendants had a duty to control the conduct of third persons to prevent them from causing harm to Mr. Justice. Each defendant also had a duty to report pursuant to NH RSA 161-F:46.

> ### NH RSA 161-F:46 Reports of Adult Abuse; Investigations. –
> Any person, including, but not limited to, physicians, other health care professionals, social workers, clergy, and law enforcement officials, suspecting or believing in good faith that any adult who is or who is suspected to be vulnerable has been subjected to abuse, neglect, self-neglect, or exploitation or is living in hazardous conditions shall report or cause a report to be made.

34. On February 18, 2018, Mr. Justice was a civilly committed forensic patient at New Hampshire Department of Corrections Secure Psychiatric Unit, housed in the E Unit.

35. The New Hampshire Department of Corrections utilized the E Unit of the SPU to house its forensic patients and inmates, which included Mr. Justice.

Exhibit 17
http://indepthnh.org/2018/12/03/state-settles-secure-psychiatric-unit-wrongful-death-case-for-75000/

36. On February 18, 2018, Defendant Carlene Ferrier RN was a Registered Nurse and the Director of Nursing of the Secure Psychiatric Unit.

Exhibit 18  https://www.nhpr.org/post/despite-recommendations-nh-one-few-states-psychiatric-unit-prison-grounds

37. On February 18, 2018, Mr. Justice was housed in the infirmary of the SPU. Mr. Justice irritated by Nurse Lombard's refusal to answer questions began banging on the cell door for approximately 10 minutes. Mr. Justice received no psychotropic medication (except emergency injections) only custodial care and seclusion until after guardianship was assigned to OPG on August 10, of 2018. Mr. Justice did receive medication for Diabetes, high blood pressure and thyroid abnormalities.

Exhibit 19  2_18_18 William Involuntary Emergency Treatment Auth.Pdf note: #5 states yes personally examined and Plan states provider coming in

38. On February 18, 2018, Defendants Joshua N. Deblois and PAGE H. Kimball Corrections employees were at the nurses' station and speaking with Nurse John Lombard.

39. On February 18, 2018, as correctional officers Joshua N. Deblois and PAGE H. Kimball entered Mr. Justice's cell behind a shield and armed with a taser which Joshua N. Deblois deployed into the patient's outer left thigh, (causing electrical throbbing and burning pain) before forcing him down, face first onto the concrete mattress frame. Corporal Morissette applied painful pressure to plaintiff's left hamstring and unreasonably restrained him. Correctional Officer Bret Richardson prevented movement of plaintiffs legs and unreasonably restrained him by securing the two lower straps of the 4 point restraints. Correctional Officer Ryan assisted with the unreasonable restraint of patient plaintiff in violation of Federal and State law.

Exhibit 20 2_18_18 William Personal Safety Emergency Intervention Order note: #5 states yes personally examined and Plan states provider coming in

40. On February 18, 2018, Mr. Justice, while naked, was involuntarily medicated and roughly transported to the restraint room.

41. On February 18, 2018, Mr. Justice was then evaluated, after one to 2 hours he was returned to his cell.

42. On April 10, 2018, Defendant Correctional Officer Frank Logan, was working at New Hampshire Department of Corrections SPU in the E Unit.

43. On April 10, 2018, Video camera recording devices were used during the cell extraction that was ordered after plaintiff William Justice was pepper sprayed. According to Captain Marshall in meeting 1/03/2020 Exhibit 21 4_9_20 William request for video.Pdf

44. On or about April 10, 2018 the New Hampshire Department of Corrections had surveillance video cameras which recorded the hall and nurses' station in the E Unit. According to Captain Marshall in meeting 1/03/2020

45. On April 10, 2018 Mr. Justice could hear a taser being repeatedly dry fired, by Frank Logan, outside of his prison cell where plaintiff was confined for approximately 23 hours per day.

46. On April 10, 2018, Mr. Justice was in his prison cell, he was using his mattress to block the gap between the door and frame, (anticipating that defendant Logan would taser him unprovoked) when he was ordered to remove the mattress by Correctional Officer Frank Logan.

47. On April 10, 2018, Mr. Justice was asked why he was still blocking the gap in the door assembly by correctional officer Frank Logan. Because of Frank Logan challenging him, William looked through the gap to explain that he had followed the order. Correctional Officer Frank Logan, then deployed pepper spray into the confined prison cell on E ward in SPU.

48. On April 10, 2018, Mr. Justice was left in the prison cell for 30 – 60 minutes before Correctional Officer Frank Logan, returned and ordered him to cuff up. Mr. Justice being agitated at the unjustified use of force, then threatened to throw urine onto Correctional Officer Frank Logan, and refused to cooperate until Nurse Lombard and Correctional Officer Nathaniel P. Seabron arrived. Nurse Lombard assessed William Justice but failed to note the breathing distress from exposure to the pepper spray.

Exhibit 22 4_10_18 William Post pepper spray.Pdf

49. On July 13, 2018, Mr. Justice while standing in his cell, with his back against the wall after applying newspaper to the cell window and refusing to remove it or "cuff up". Mr. Justice climbed to the top of the concrete shelf and placed his pillow in front of his face.

50. On July 13, 2018, the correctional officer, Benjamyn Carver, deployed pepper spray into Mr. Justice's prison cell. The pepper spray was repeatedly deployed by different actors into Mr. Justice's locked cell which caused him to double over in pain, cough, and spit.

51. On July 13, 2018, Correctional officer Frank Logan entered the cell after approximately 30 minutes and forced Mr. Justice from the high shelf of concrete to near the floor of concrete onto the mattress frame causing painful injuries to the patient's wrists. Correctional officer Kum was initially filming the incident but later unreasonably and incorrectly applied the handcuffs to patient plaintiff's wrists that were put on with the keyhole facing inward (towards his body).

Exhibit 23 7_13_18 William Post use of force.Pdf note: Other states that the "patient was handcuffed after he was taken down"

52. On July 13, 2018, . PPO Jonathan Boiselle deployed pepper spray into plaintiff's closed cell on involuntary seclusion Ward E and then secured plaintiff's right leg by utilizing pain compliance with PPO's right leg shin on the back of patient's lower calf/ankle. Handcuffs were applied to Mr. Justice, incorrectly, by Correctional officer Kum, despite no signs of assaultive, violent, or aggressive behavior PPO Boiselle filmed part of the altercation and excessive force of restraint and pepper spray altercation.

53. On July 13, 2018, a correctional officer ordered Mr. Justice to get up to go to the shower, at which time Mr. Justice stated that he "can't breathe" and was given a cursory exam by Nurse Mark Gagne.

54. On January 22, 2019, Mr. Justice in an infirmary cell was accused by Frank Logan, of attempting to spit at a female correctional officer. Mr. Justice, while restrained and on the floor was tased.

Exhibit 24 1_22_19 William Involuntary Emergency Treatment Auth.Pdf note: #5 states that patient was personally examined. Under Emergency Treatment Ordered states "When D/C from 4 points 1:1 until seen in the morning."

55. On January 22, 2019, while cuffed, Mr. Justice was pulled upright to his feet and dragged to the 4 point restraint room.

56. On January 22, 2019, Mr. Justice begged for help because he was in pain from the aggravation of an old back injury. While dragging Mr. Justice to the restraint room defendant Frank Logan, forced Mr. Justice's face upward in a belittling and humiliating manner in front of approximately 6 other staff members.

57. On January 22, 2019, Defendants Frank Logan, and Corrections Officer Nathaniel P. Seabron roughly placed Mr. Justice into four point restraints before Corrections Officer Nathaniel P. Seabron modified the taser gun and tased the restrained patient.

58. On January 22, 2019, As Mr. Justice remained in 4 point restraints, he began to fall asleep.

59. On January 22, 2019, Defendant Joshua N. Deblois roughly awakened Mr. Justice, performed an unnecessary strip search and escorted him back to his cell.

60. Mr. Justice has repeatedly requested investigation of these assaults On February 18, 2018.

61. Mr. Justice has repeatedly requested investigation of these assaults On April 10, 2018.

62. Mr. Justice has repeatedly requested investigation of these assaults On July 13, 2018.

63. Mr. Justice has repeatedly requested investigation of these assaults On January 22, 2019.

64. Mr. Justice alleges that his paperwork and personal belongings have become missing after "cell shakedowns"

65. Mr. Justice has filed multiple Inmate/Patient grievance/request slips with prison employees regarding violations of his rights and regarding fair and equal treatment.

Exhibit 25  12_29_19 William greivance cold water shower.Pdf
Exhibit 26  4_7_20 William cold shower.Pdf
Exhibit 27  5_11_19 William grievance clothes fall off.Pdf
Exhibit 28  6_26_19 William grievance toilet paper.Pdf
Exhibit 29  8_08_19 William grievance transfer documents release

66. Mr. Justice has made complaints to the NH Disability Rights Center.

Exhibit 30  2_24_19 William DRC pepper spray.Pdf
Exhibit 31  7_19_19 William DRC Letter
Exhibit 32  9_20_19 William grievance guardian

67. Mr. Justice has made attempts through prison staff and his guardian to file lawsuits to protect his civil rights.

Exhibit 33 6_13_19 William Habeas corpus sent to probate.Pdf

68. Defendants Eric Vangelder and/or Eric Hansmeier have failed to protect the ward's (William Justice) civil rights. Defendant Eric Vangelder has also refused to assist in remedies for Plaintiffs requests to be removed from SPU. Eric Vangelder and/or Eric Hansmeier have often failed to arrive as scheduled to meet with Mr. Justice. Eric Vangelder and/or Eric Hansmeier had the responsibility to see that the ward who was deemed ready to move to New Hampshire Hospital received a timely transfer. The dysfunction of the state or the Legislatures' unwillingness to provide an appropriate facility does not relieve the guardian of the responsibility to protect the ward's civil rights and failed to report after January 22, 2019 abuses. Eric Vangelder and/or Eric Hansmeier had a responsibility legally under Olmstead and ethically to seek other remedies or placement of the ward in the least restricted environment that Mr. Justice was entitled to.

Exhibit 34   5_10_19 William Dr letter to deNesnera NHH.Pdf
Exhibit 35   7_12_19 William letter Hinck to deNesnera.Pdf
Exhibit 36   8_22_19 William Eric Van Gelder letter.Pdf
Exhibit 37   11_15_19 William grievance discharge request.Pdf
Exhibit 38   12_10_19 William 3rd Party Evaluation.Pdf
Exhibit 39   12_23_19 William NHH Acceptance.Pdf
Exhibit 40   7_15_19 NHH letter of denial.pdf
Exhibit 15   Heath v Hanks 217-2019-CV-00765
Exhibit 41   Case # 317-2018-GI-00414 Annual report
Exhibit 42   7_29_19 William grievance request 3rd opinion

69. OPG Defendants have failed to report these abuses / assaults per NH RSA 161-F: 46 Defendants enjoy a special relationship with DOC by being preferentially funded by DOC and being included on attorney privileged emails. OPG was acting as a state actor in concert with DOC.

Exhibit 43 Letter Tri County Guardianship - DOC refuses to transfer payment to TCC(Tri County Cap)
Exhibit 44 Motion to compel discovery of documents with redactions removed


70. Mr. Justice is not a convicted inmate. Mr. Justice was a patient. Mr. Justice felt unsafe because of the inmates he was commingled with as well as punitive corrections tactics utilized by correctional officers against him.

Exhibit 45   4_10_19 William In the event of my death.Pdf

71. On February 18, 2018, Mr. Justice was tortured for approximately one hour and suffered extreme physical and mental pain, humiliation, and suffering from being tased and physically restrained without cause or provocation. These tactics are utilized by law enforcement they are not recognized as acceptable interventions by the psychiatric community.


72. On April 10, 2018 Mr. Justice was tortured for approximately one hour and suffered extreme physical and mental pain, humiliation, and suffering from being pepper-sprayed and physically restrained without cause or provocation. These tactics are utilized by law enforcement they are not recognized as acceptable interventions by the psychiatric community.

73. On July 13, 2018, Mr. Justice was tortured for approximately one hour and suffered extreme physical and mental pain, humiliation, and suffering from being pepper-sprayed and physically restrained without cause or provocation. These tactics are utilized by law enforcement they are not recognized as acceptable interventions by the psychiatric community.

74. On January 22, 2019, Mr. Justice was tortured for approximately three hours and suffered extreme physical and mental pain, humiliation, and suffering from being tasered and physically restrained while staff ignored his pleas for help, assistance, or to be treated with basic human dignity. These tactics are utilized by law enforcement they are not recognized as acceptable interventions by the psychiatric community.

75. Defendants failed to follow the law, and Consent Decree regarding the events leading up to, including and following the abuse of Mr. Justice. There is no standardized competency restoration programs in New Hampshire up to and including the date of this amended filing. Due to the lack of no competency restoration program and lacking routine anti-psychotic medication all of these incidents were preventable.

76. New Hampshire law required Defendants to immediately report the abuse of Mr. Justice to the Department of Health and Human Services under NH RSA 161-F:47 .

77. The abuse of Mr. Justice was not reported to the State of New Hampshire's Adult Protective Services.

78. The on-site use of force investigation failed to substantiate a complaint for abuse with pepper spray and inappropriate utilization of restraints on Mr. Justice; according to Captain Marshall, a copy of which is being denied to Mr. Justice. William Justice has also been denied video per Capt. Marshall.

79. Mr. Justice was unnecessarily and unreasonably secluded while he was a New Hampshire Department of Corrections patient in the Secure Psychiatric Unit of the men's prison.

80. Mr. Justice was unnecessarily and unreasonably restrained while he was a New Hampshire Department of Corrections patient in the Secure Psychiatric Unit of the men's prison.

81. Mr. Justice was unnecessarily and unreasonably pepper sprayed while he was a New Hampshire Department of Corrections patient in the Secure Psychiatric Unit of the men's prison.

82. Mr. Justice was unnecessarily and unreasonably tasered while he was a New Hampshire Department of Corrections patient in the Secure Psychiatric Unit of the men's prison.

83. Because Defendants failed to abide by the terms of the Consent Decree, federal civil rights, New Hampshire law, and recognized standards of psychiatric care, Mr. Justice was denied humane care and treatment while a patient in the Secure Psychiatric Unit of the men's prison. Plaintiff received NO anti-psychotic medication except emergency injections until after guardianship was ordered on August 10, 2018. Plaintiff was civilly committed due to his diagnosed serious mental illness and was incarcerated in solitary confinement conditions while being provided only custodial care and abuse in violation of his Federal rights and NH state law. Virtually all of the incidents in this complaint occurred prior to the administration of routine anti-psychotic medication, and prior to appropriate clinically indicated

medication received at New Hampshire Hospital after a successor guardian was appointed on March 4, 2020.

Exhibit 46 Brown Affidavit section 10 & section 25
Exhibit 47 317-2018-GI-00414 10_25_19 William Guardianship Annual

84. Defendants failed to protect Mr. Justice from physical and psychological abuse while he was a New Hampshire Department of Corrections patient in the Secure Psychiatric Unit of the men's prison.

85. Department of Correction's Defendants reported Mr. Justice's psychiatric emergency to the Guardian Eric Vangelder who failed to return their call on January 22, 2019. Department of Correction's Defendants reported Mr. Justice's psychiatric emergency to the Guardian Eric Hansmeier who failed to return their call on January 22, 2019

COUNT I: VIOLATION OF FOURTH AMENDMENT OF U.S CONSTITUTION: §1983 -

EXCESSIVE FORCE

   86. Mr. Justice repeats and reasserts each and every allegation of paragraphs l through 85 as if fully set forth herein.

   87. The Fourth Amendment of the United States Constitution protects citizens against the use of excessive force by guaranteeing that all people shall "be SECURE in their person . . . against unreasonable seizures."

88. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

89. The right of citizens to be free from the use of excessive force is an established right.

90. Defendants are cognizant of this right to be free from the use of excessive force.

91. By virtue of the foregoing, the conduct of Defendants, who were acting under color of state law, violated Mr. Justice's rights as established by the Fourth Amendment to the United States Constitution.

92. Defendants' actions in using excessive force exceeded the scope of their discretion.

93. As a result of Defendants' violations of Mr. Justice's constitutional rights, Mr. Justice has suffered physical injury, emotional distress, and other damages for which he seeks compensation.

COUNT II: VIOLATION OF THE FOURTH AMENDMENT OF THE U.S CONSTITUTION: §1983 -

RIGHT TO FREEDOM FROM UNREASONABLE BODILY RESTRAINT
94. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 93 as if fully set forth herein.

95. The Fourth Amendment of the United States Constitution protects citizens by guaranteeing that all people shall "be secure in their person . . . against unreasonable seizures."

96. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

97. The right of citizens to be free from unreasonable bodily restraint is an established right.

98. Defendants are cognizant of this right to be free from unreasonable bodily restraint.

99. By virtue of the foregoing, the conduct of Defendants, who were acting under color of state law, violated Mr. Justice's rights as established by the Fourth Amendment to the United States Constitution.

100. Defendants' actions in unreasonably restraining Mr. Justice exceeded the scope of their discretion.

101. As a result of the Defendants' violations of Mr. Justice's constitutional rights, Mr. Justice has suffered physical injury, emotional distress, and other damages for which he seeks compensation.

COUNT III: VIOLATION OF THE FOURTH AMENDMENT OF THE U.S CONSTITUTION: §1983-

FAILURE TO INTERVENE

102. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 101 as if fully set forth herein.

103. Defendant correctional officers and New Hampshire Department of Corrections Employees have an affirmative duty to intervene on behalf of Mr. Justice when they observe an officer or mental health worker violating the constitutional rights of an individual in their presence.

104. Defendant Correctional officers and New Hampshire Department of Corrections Employees who observed, but did not deploy, the use of excessive force and restraints against Mr. Justice, are liable for the actions of the officers or mental health workers that violated the civil rights of Mr. Justice.

105. The threat and deployment of pepper spray against Mr. Justice under the facts and circumstances that existed at the time of the incidents are a clear violation of Mr. Justice's constitutional rights.

106. The threat and deployment of the taser against Mr. Justice under the facts and circumstances that existed at the time of the incidents are a clear violation of Mr. Justice's constitutional rights.

107. The unreasonable bodily restraint of Mr. Justice under the facts and circumstances that existed at the time of the incident are a clear violation of Mr. Justice's constitutional rights.

108. Defendant Correctional officers and New Hampshire Department of Corrections employees who observed the use of excessive force and unreasonable bodily restraints against Mr. Justice had the time and opportunity to intervene prior to the use of excessive force or bodily restraints.

109. Defendant Correctional officers and New Hampshire Department of Corrections Employees who observed the use of excessive force and unreasonable bodily restraints against Mr. Justice made a deliberate choice not to make a reasonable attempt to stop the use of excessive force.

110. As a proximate result of the violation of Mr. Justice's constitutional rights, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT IV: VIOLATION OF FOURTEENTH AMENDMENT OF U.S. CONSTITUTION:

§1983 - FAILURE TO TRAIN EMPLOYEES

111. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 110 as if fully set forth herein.

112. Defendants have a duty to protect the rights of the citizens and patients that their law enforcement officers encounter.

113. Defendants' placement of law enforcement officers into New Hampshire Department of Corrections SPU placed them in direct contact with vulnerable and mentally ill at-risk patients.

114. Defendants' failure to train its employees, including law enforcement officers, on how to deal with, interact, and protect persons who are mentally ill was a deliberate and/or conscious choice evidencing a state policy.

115. The need for more, or different training on how to deal with, interact, and protect persons who are mentally ill and/or are experiencing a mental health crisis is obvious and the inadequacy of the training was so likely to result in a violation of constitutional rights that the Defendants were deliberately indifferent to the need for more or different training.

116. Defendants' deficient training led to the failure to protect Mr. Justice's constitutional rights.

117. As a proximate result of the breach of duties owed by Defendants to Mr. Justice, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT V: VIOLATION OF 42 U,S.C. § 12132 AMERICANS WITH DISABILITIES ACT

118. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 117 as if fully set forth herein.

119. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

120. Mr. Justice was a qualified individual with a disability due to severe mental impairment, suffering from, Schizophrenia, paranoid type which substantially limits him in one or more major life activities, including sleeping, concentrating, thinking, and/or caring for himself.

121. Mr. Justice was discriminated against by Defendants in violation of the ADA because he was regarded as a qualified individual with a disability due to impairment. Others found incompetent to stand trial and unrestorable are housed at New Hampshire Hospital or served in the community.

(Anthony Heath, James Robinson or Corey Peterson for example) *Heath v. Hanks*, 433 F. Supp. 3d 221, 3 2019 DNH 212 (D.N.H. 2019)

Exhibit 13 Case # 317-2018-IN-00027

122. Mr. Justice was denied proper protection and fair treatment by the Defendants.

123. Mr. Justice was excluded from participation in, and/or denied the benefits of the services, programs, or activities of the defendants, which are available to individuals suffering from mental health disabilities. He was involuntarily secluded within the SPU.

124. Mr. Justice was denied said protection and fair treatment due to his mental disabilities, or because he was regarded as a qualified individual with a disability. Defendants acted with deliberate indifference and/or discriminatory animus regarding Mr. Justice.

125. As a proximate result of the violation of Mr. Justice's rights under the ADA, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT VI: VIOLATION OF FOURTEENTH AMENDMENT OF U.S. CONSTITUTION:

§1983: EQUAL PROTECTION

126. Mr. Justice repeats and reasserts each and every allegation of Paragraphs 1 through 125 as if fully set forth herein.

127. The Fourteenth Amendment to the U.S. Constitution provides, in pertinent part, that " ... no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

128. Mr. Justice was similarly situated to other individuals, i.e., class members, residing at New Hampshire Department of Corrections SPU.

129. Upon information and belief, the similarly situated class members were not unreasonably restrained while patients at New Hampshire Department of Corrections SPU.

130. Upon information and belief, the similarly situated class members were not pepper sprayed, tased or otherwise abused while patients at New Hampshire Department of Corrections SPU.

131. Defendants have no rational basis to explain the difference in treatment of Mr. Justice on or about February 18, 2018, April 10, 2018, July 13, 2018, and January 22, 2019 as compared to others similarly situated.

132. As a proximate result of the violation of Mr. Justice's constitutional rights, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT VII: VIOLATION NEW HAMPSHIRE LAW AGAINST DISCRIMINATION

133. Mr. Justice repeats and reasserts each and every allegation and reasserts each and every allegation of paragraphs 1 through 132 as if fully set forth herein.

134. By virtue of the foregoing, the conduct of Defendants violated Mr. Justice's rights as established by the Fourth Amendment to the United States Constitution and New Hampshire law.

135. By virtue of the foregoing, the conduct of Defendants violated Mr. Justice's right to be free from the use of excessive force and unreasonable bodily restraint as established by Article 2, Section 1 of the New Hampshire Constitution and New Hampshire law.

136. Defendants intentionally interfered with Mr. Justice's rights under the New Hampshire and United States Constitutions and New Hampshire law by the threats of, and the use of, physical force and violence against him and the use of unreasonable bodily restraints.

137. As a proximate result of the violation of Mr. Justice's constitutional rights, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT VIII: NEGLIGENCE - FAILURE TO PROTECT

138.   Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 136 as if fully set forth herein.

139. Defendants owed Mr. Justice a duty of protection as a result of him being confined on the premises of New Hampshire Department of Corrections State Prison for Men SPU.

140. Defendants breached this duty by, among other things, failing to exercise reasonable care, including but not limited to, failure to follow protocols for and the unreasonable use of restraints, failure to operate a safe premises within which it had confined Mr. Justice, inappropriate use of pepper spray, and tasers failure to protect Mr. Justice from the threat and use of excessive force, and the failure to provide timely medical care and attention following the use of pepper spray.

141. Defendants acted recklessly or with callous disregard or deliberate indifference, in failing to take adequate steps to protect Mr. Justice while confining him, in failing to adequately or reasonably provide care and medical attention to Mr. Justice following the use of pepper spray, tasers, and failing to protect Mr. Justice from the threat and use of excessive force and unreasonable bodily restraints against him.

142. Defendants were in control of the scene at the time of the incidents.

143. Defendants observed the risk and use of excessive force and bodily restraints.

144. Defendants had a realistic opportunity to prevent the use of excessive force and unreasonable use of bodily restraints.

145. Defendants had enough time to prevent the use of excessive force and unreasonable use of bodily restraints.

146. Defendants further failed to protect Mr. Justice by failing to report the abuse to Mr. Justice in accordance with New Hampshire State law and New Hampshire Department of Corrections policies.

147. As a proximate result of the breach of duties owed by defendants to Mr. Justice, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT IX: NEGLIGENT SUPERVISION

148. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 147 as if fully set forth herein.

149. Due to his diagnosed serious mental illness, Mr. Justice had been committed to New Hampshire Department of Corrections SPU (NH RSA 135:C) since a court finding on February 9, 2018 that he was not competent to stand trial and not restorable for charges of attempted murder, assault and reckless conduct with dangerous weapon.

Exhibit 10 CASE 317-2018-IN-00027

150. A special relationship existed between Mr. Justice and Defendants because of him being required by law to be in the physical custody and under the protection of New Hampshire Department of Corrections SPU.

151. As a result of the special relationship, Defendants had a duty to control the conduct of third persons to prevent them from causing harm to Mr. Justice or conducting themselves to create a risk of bodily harm.

152. Defendants repeatedly failed to intervene for Mr. Justice over the period from February 18, 2018, to the present date.

153. Defendants knew, or should have known, of the necessity and opportunity for exercising control of third parties.

154. As a proximate result of the breach of duties owed by Defendants to Mr. Justice, Mr. Justice has suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT X: ASSAULT

155. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 153 as if fully set forth herein.

156. Defendants knew Mr. Justice was a vulnerable patient suffering from a mental illness.

157. Defendants' response to Mr. Justice's actions were intended to cause him to feel an apprehension of an imminent harmful or offensive contact.

158. Defendants responded to Mr. Justice's actions by, among other displays of force, using correctional officers to maintain order in a medical setting, making little or no attempt to use any non-aggressive or non-confrontational communications, failing to follow protocols or training on dealing with mentally ill individuals, threatening the use of pepper-spray, threatening the use of a taser, and threatening the use of physical restraints.

159. Mr. Justice was, in fact, put into apprehension of an imminent harmful or offensive contact on multiple dates.

160. As a proximate result of Defendants' assaults, Mr. Justice suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT XI: BATTERY

161. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 160 as if fully set forth herein.

162. Defendants intended to cause harmful or offensive contact with the person of Mr. Justice, or an imminent apprehension of such a contact.

163. Defendants made offensive contacts with the person of Mr. Justice using pepper-spray, taser and physical restraints.

164. As a proximate result of Defendants battery, Mr. Justice suffered emotional distress, physical injury, and other damages for which he seeks compensation.

COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

165. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 164 as if fully set forth herein.

166. Defendants failed to follow protocol and training, and intentionally or recklessly escalated the incidents on February 18, 2018, April 10, 2018, July 13, 2018, and January 22, 2019 such that it was certain, or substantially certain, that emotional distress to Mr. Justice would result from such conduct.

167. The conduct of the Defendants in needlessly and recklessly escalating the situation to a confrontation deploying pepper-spray, and / or taser and the use of physical restraints, without caring for or allowing reasonable care and medical attention for at least 20 minutes, failing to follow protocol and training, failing to document and report the incidents and falsifying or omitting documentation, and leaving Mr. Justice vulnerable and crying out and begging for assistance, was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

168. Defendants' actions created the danger that caused Mr. Justice's emotional distress.

169. The emotional distress Mr. Justice suffered was so severe that no reasonable person could be expected to endure it.

170. As a proximate result of Defendants' Intentional Infliction of Emotional Distress, Mr. Justice suffered emotional distress and other damages for which he seeks compensation.

COUNT XIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

171. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 170 as if fully set forth herein.

172. Defendants owed Mr. Justice a duty of protection and assistance, because Mr. Justice was required by law to be in physical custody and under the protection of the New Hampshire Department of Corrections SPU.

173. Defendants breached their duties to Mr. Justice by needlessly and recklessly escalating the situation to a confrontation deploying pepper-spray, and / or a taser and the use of physical restraints, without caring for or allowing reasonable care and medical attention for at least 20 minutes, failing to follow protocol and training, failing to document and report the incident and falsifying documentation, failing to report Mr. Justice's abuse and leaving Mr. Justice vulnerable and crying out and begging for assistance.

174. Defendants' breach of their duties to Mr. Justice caused serious mental harm to Mr. Justice.

175. As a direct and proximate result of the Defendants' Negligent Infliction of Emotional Distress, Mr. Justice suffered pecuniary losses, emotional distress, and other damages for which he seeks compensation.

COUNT XIV: BREACH OF CONTRACT

176. Mr. Justice repeats and reasserts each and every allegation of paragraphs 1 through 175 as if fully set forth herein.

177. Defendants have failed to meet their obligations set forth in the Consent Decree and State law.

178. On or about February 13, 2018, through August 3, 2020, Defendants breached the Consent Decree and State law by unreasonably secluding Mr. Justice.

179. On or about February 18, 2018, April 10, 2018, July 13, 2018, and January 22, 2019, Defendants breached the Consent Decree and State law by unreasonably restraining Mr. Justice.

180. On or about February 18, 2018, April 10, 2018, July 13, 2018, and January 22, 2019 Defendants breached the Consent Decree and State law by failing to immediately report the abuse of Mr. Justice.

181. On or about February 18, 2018, April 10, 2018, July 13, 2018, and January 22, 2019, Defendants breached the Consent Decree and State Law by failing to immediately investigate the abuse of Mr. Justice.

182. Mr. Justice has suffered damages because of Defendants' breach of the Consent Decree and State Law.

BENCH TRIAL REQUEST

183.    Mr. Justice requests a trial by Judge.

184. Mr. Justice requests that the federal court examine the constitutionality of New Hampshire confining civilly committed mental health patients at the New Hampshire DOC State Prison for Men Secure Psychiatric Unit. This action seeks declaratory and injunctive relief prohibiting the Defendants from continuing this practice of confining men and women civilly committed in a penal institution.

Mr. Justice respectfully requests that the court appoint an attorney as he is diagnosed mentally ill, and indigent.

Plaintiff requests the federal court examine the constitutionality of New Hampshire sending civilly committed patients to the Secure Psychiatric Unit located within the NH State Prison for men.

This action seeks declaratory and injunctive relief prohibiting Defendants from continuing the unlawful practice of confining men and women civilly committed to the SPU at the NHSMP, and requiring Defendants to provide these individuals with care and treatment for mental illness in a Department of Health and Human Services ("DHHS") licensed and accredited health care facility and not in a facility managed by the Department of Corrections("DOC").

Wherefore Mr. Justice prays for judgment against each and every Defendant, individually, and in their official capacities, on each and every count in an amount that reasonably compensates him for all damages, together with punitive damages, interest, costs, and an award of reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C § 1983 and / or NH and State Law, Discrimination law, to the highest extent allowable by law, from the earliest date allowable by law, for injunctive relief, and grant such further relief as the Court may deem just and proper.

William Justice, prose

*William S. Justice* [signature]

Signed This date February 24, 2025 in Concord, NH

02/24/25 (Mon.)
51 Storrs Street, #310
Concord, NH 03301
(603) 931-6357 or 230-2441
www.gentlegiant03301@yahoo.com