*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JULY 7, 2025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * * *
                                      *
WILLIAM SOLER JUSTICE                 *
                                      *
              Plaintiff,              *
                                      *  1:20-cv-517-PB
         v.                           *  March 17, 2025
                                      *  2:38 p.m.
CHRISTOPHER T. SUNUNU, ET AL          *
                                      *
              Defendants.             *
                                      *
                                      *
* * * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

For the Plaintiff:          William Soler Justice
                            Appearing Pro Se

                            Wanda Duryea
                            Guardian of Plaintiff

For the Defendant:          Catherine Denny, Esq.
                            NH Attorney General's Office

Court Reporter:             Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            U.S. District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603) 225-1442

P R O C E E D I N G S

THE CLERK:  This court is in session and has for consideration a status conference in civil matter 20-cv-517-PB, William Soler Justice vs. the Governor, State of New Hampshire, et al.

THE COURT:  Before we get into the amended complaint, you had mentioned to me at several hearings the possibility of there being funds available for you to retain an expert.

MR. JUSTICE:  Yes.

THE COURT:  And I investigated that matter and, indeed, there is an order, it's a standing order that the chief judge of this court, Judge McCafferty, has entered.  And it deals -- it doesn't deal directly with your situation.  It deals with when there is a guardianship or when there's a pro bono attorney representing.  Pro bono means when we get a lawyer to work for free, Judge McCafferty has determined that it's really hard to get lawyers to work for free and in cases where experts are required, the lawyer shouldn't have to pay for the expert and the client doesn't have money in most pro bono cases.

So she has issued an order saying in those kind of cases, guardianship and pro bono attorney cases, someone can get up to $5,000 in -- in expert fees.

I have a copy of that order.  I'm going to have the

clerk hand you a copy of it.  It doesn't apply directly to your situation, but I do think you have an argument that -- to file a motion when you've identified an expert and say, Judge, I have an expert, here's his CV, here's what he wants -- I want him to testify about, he's willing to do it for $5,000 or less, here's his hourly rate schedule, I would ask -- I'm asking you, consistent with Judge McCafferty's order, to enter an order authorizing up to $5,000 in funds for an expert.

It comes from a fund when lawyers file complaints and when they -- or when they get admitted to the Bar, let me say that, or they file pro hac vice motions, they have to pay a fee.  That fee goes into a fund.  That fund can be used for certain limited purpose to further the interests of justice.  And Judge McCafferty has said that fund, it furthers the interest of justice when there's a pro bono lawyer or a guardianship who needs an expert to use up to $5,000 from that fund.

So this order -- take a look at it.  It -- I do think there's an argument that you should be able to get up to $5,000 for experts.  So that's something you can work with when you go out trying to look for experts; say, you know, here's a case where the judge has said -- the chief judge has said that this is available.

It's up to me to decide.  I'm inclined, if you give me a qualified expert on a legitimate subject who's willing to

do it, given your lack of resources, to pay up to 5,000 for that.

But we don't have to make any decisions on that now. What I want you to do is find your expert, find out what they're going to testify to, find out whether they'll do it for $5,000.  Then you can file a motion to say, please pay us up to 5,000.  Do you see what I'm saying?

MR. JUSTICE:  I understand, your Honor.

THE COURT:  Okay.  So that's going to be up to you, but when you get to the point -- we're going to at some point set expert disclosure deadlines.  Then you're going to go out and look for an expert, see if you can get one to do it for you for $5,000 or less.  Do you see what I'm saying?

MR. JUSTICE:  Okay.

THE COURT:  Okay?

MR. JUSTICE:  Thank you, your Honor.

THE COURT:  Okay.  All right.  So that covers that.

So let's go to the amended complaint.  I have not looked at the amended complaint, so I -- one of the things I want to make sure of is this amendment, we were allowing it to bring in defendants who were not named but who might be liable for the specific incidents you've already identified.  In other words, this isn't about naming whole new events.  It's about when I was tased on this date, this defendant I didn't name initially because I didn't know who it was, I now have reports

and I'm naming them.

Is that what you've done?  Have you kept it precisely to the same incidents that are the subject of your -- of the lawsuit as I defined it?

MR. JUSTICE:  First of all, your Honor, I want to let you know that Wanda Duryea is now my guardian.  I don't know if you were aware of that.

THE COURT:  I'm sorry.  You're now a guardian again?

MS. DURYEA:  I'm his guardian again.

MR. JUSTICE:  She's my guardian again.

THE COURT:  All right.  Well, I did -- I was not aware of that.  All right.

MS. DURYEA:  I had told the case manager and she said to bring in my paperwork.

THE COURT:  Okay.  So you are then speaking for him in this lawsuit?

MS. DURYEA:  I can, yes.

THE COURT:  Okay.

MS. DURYEA:  That's up to you.

THE COURT:  Well, I'll let him -- I'll let him speak, but I need to have -- if there's any point at which he is asking to do something that you shouldn't -- don't think should be done or you want to do something that he doesn't want to do, you need to speak up because I have to -- as his guardian, you have --

MS. DURYEA:  Right.  So --

THE COURT:  If you're properly appointed, it would seem to me within the scope of the guardianship would be to control what actions are taken on his behalf with respect to litigation he has ongoing.

MS. DURYEA:  So I was actually recommended to become his guardian again by John Laboe, the man who had investigated his competency for the Court.  John was going to try to represent Bill and there were some differences of opinion between John and Bill.  And I explained to John that it was Bill's mental illness, not an opinion, and John said that in order for this case to go forward, Bill should have a guardian.

THE COURT:  So you went to the state court --

MS. DURYEA:  I went to the probate court.

THE COURT:  -- and got appointed guardian for purposes -- including for purposes of acting with respect to this litigation?

MS. DURYEA:  Yes, sir.

THE COURT:  Okay.  So, yeah, assuming the paperwork is valid, I have no reason to question it.  Unless you object, I'm going to let Mr. Justice speak --

MS. DURYEA:  I think it's in his best interest to try to speak.

THE COURT:  Right.  And so I don't want to shut you down, but, ultimately, because there's a guardian, your

guardian has the final say on what you do.  So I want her to speak up if she disagrees about something that is -- you want to do on your behalf --

MS. DURYEA:  And I --

THE COURT:  -- and we can evaluate that.

MS. DURYEA:  I rewrote the lawsuit or amended it, whatever you want to say.

THE COURT:  Okay.

MS. DURYEA:  We did not add any new events, but I added more information in support of his original claims.

THE COURT:  I haven't carefully reviewed the complaint, but here's what I want to make clear.  Okay?  In a -- some time ago, I narrowed the complaint in this case to a specified series of events.

MS. DURYEA:  Yes.  And we have not changed those.

THE COURT:  And I want to make sure that we're not going beyond those specified series of events.

MS. DURYEA:  We are not.

THE COURT:  To the extent I allowed you to -- to seek to amend to add additional defendants, it was only because what you told me was with respect to those events that are in the complaint as narrowed, there were more people involved than we knew and when we got our discovery, we knew these additional people were involved and your only -- and that they're liable because of their involvement in those events.

MS. DURYEA:  Yes, sir.  We have not changed or added --

THE COURT:  Is that how --

MS. DURYEA:  -- any events.

THE COURT:  All right.  Do you agree with that?

MS. DENNY:  I do not, your Honor.

THE COURT:  Okay.  So you're going to then have to file a -- either -- I want you to meet and confer and see if you can agree on narrowing the scope of the events.  If not, you can file a motion to dismiss claims or defendants in the new amended complaint to the extent that they go beyond the scope of these events.

Now, I -- again, I haven't looked at this in a long time, but essentially I thought this was a case about a small number of incidents where there was a -- a Taser used or pepper spray used or maybe some kind of restraint used and that was it.  It was those one, two, or three -- just a handful of cases.

Is that what -- you'll have to refresh my memory because I haven't looked at this in a long time.

MS. DENNY:  So, your Honor, originally, the original complaint that he filed or that Ms. Duryea filed was -- included a breach of contract -- and I'm sorry -- a breach of contract claim, so alleging breach of contract regarding a class action that was dismissed on preliminary review.

There was also a claim for violation of the ADA.

There were several claims all within the original complaint that were dismissed on preliminary review and those all -- and several defendants. Those are all back in this amended complaint.

THE COURT: All right. That preliminary review order is the law of the case and I'm not going to expand the case to include things that were dismissed on preliminary review. And we're too late in the process here to start adding in new acts of liability, so that -- I'm not going to -- I'm not going to allow that. All right?

MS. DENNY: Your Honor, it's hard to tell what exactly was --

THE COURT: Now, wait a minute, though. I have a memory. Maybe I'm wrong.

I thought in addition to what was done on preliminary review, which was done by a magistrate judge and an order approved by me, I assume, but I also thought I -- I did a -- issued an order that was narrowing in the scope of the complaint. Am I misremembering that?

MS. DENNY: From what I recall, you had issued -- this Court issued an order that was approving the -- the preliminary review and then there was also one that -- yeah, I don't recall --

THE COURT: Can I ask the -- my clerk, look through

the docket.  I have a memory of either -- maybe I did it in a hearing, but with Mr. Justice, where I said -- you know, I -- I thought I was making very clear there were just a few incidents that we're focusing on.  They're all excessive force claims and they're -- against a discrete number of defendants.

And what I wanted to allow by amendment is with respect to those claims of excessive force, adding back people who -- there was another guy holding the leg and I didn't know his name and now I know his name and he was holding my leg or whatever.  That's what I'm -- that's all that I want to -- this case was filed when?

MS. DENNY:  I think back in 2020.

THE COURT:  Yeah.  So it's five years old.  It's too late to be going into new events or trying to revive events that were out previously.  We're not doing that.  We're going to try -- we're going to have -- we're going to have complete discovery, have summary judgment, and if it survives summary judgment, a trial on the excessive force claims.  That's all. Nothing else.  No ADA, no theories that were dismissed preliminarily.  We're done with that.  Okay?  I -- you can appeal later on.

I -- I -- this is a five-year-old case.  I have to narrow this down to what is actually going to be tried.  Okay? And the judge -- a judge already determined that and I approved that decision.  Those claims are gone.

MS. DENNY:  Okay.

THE COURT:  Appeal them if you don't like the ruling when the case is all over.  Okay?

I'm going to give you a trial.  What concerned me was you said people used force against you that was unlawful and I want to give you a chance to make those claims.  That's what the case is about.  It's not about anything else.

MS. DURYEA:  So --

THE COURT:  Just wait a second.  Let me -- did you guys find anything out?

THE CLERK:  Yeah.  It looks like on January 22nd you issued an order that he could add more defendants without prejudice to the new defendants' right move to dismiss the claims for failure to state a claim.  Amended complaint should be filed before February 21st.

THE COURT:  Yeah.  I think if we went into the -- the -- the transcript of that hearing, you would see me saying there are a discrete number of events; that's what I want to focus on.

So I want you to meet and confer -- any claim that you brought that was dismissed that was in the original complaint, I mean that the magistrate judge reviewed, you had your shot on that.  They were reviewed.  They were rejected.  Maybe we made a mistake.  If we did, you have rights of appeal.

MS. DURYEA:  Okay.

THE COURT:  So that's behind us.  We're not going to go back and --

MS. DURYEA:  But we absolutely did not add any new events.

THE COURT:  Okay.

MS. DURYEA:  If she's saying that we did, give us the name.

THE COURT:  All right.  So we need to distinguish -- let's start --

MS. DURYEA:  We didn't.

THE COURT:  Don't get angry with each other yet, because I want you to be talking and compromising --

MS. DURYEA:  We'll talk.

THE COURT:  -- and agree.  But -- and reasonable people can do this.

MS. DURYEA:  But, your Honor --

THE COURT:  Just -- just wait.  Just wait a second.

We need to distinguish -- so I made clear there are a series of events where a Taser was used or pepper spray was used or some kind of force was used that's excessive and unconstitutional under those circumstances.  Those were in the complaint that -- before you filed this amendment and -- and if they were not dismissed on preliminary review and they were in the complaint after preliminary review, they're still in the complaint.  And what you can do is add new people to the extent

you think there's evidence that those people are culpable for those events of excessive force.

Now, there are also -- so that's events. There also are theories of liability, and apparently what you -- one of the things you did do was -- or at least what the defendant's lawyer is saying -- is you added back theories of liability. As opposed to excessive force, you added back theories that were rejected by the magistrate judge on original complaint. And I'm telling you with respect to those theories, a decision -- you -- you took your shot, the magistrate judge ruled, I approved it. Those are gone. They're not going to come back in.

So as to those theories, the amended complaint -- those theories of liability, like normally -- I haven't looked at your complaint. If they're set forth in -- like they should be, it's a separate count. Count One, excessive force, blah, blah, blah; Count Two, ADA; Count Three, breach of contract. If the magistrate judge dismissed the ADA claim and dismissed the breach of contract claim, they're out, but you have appellate rights if a mistaken was made.

With respect to new defendants as to excessive force claims that are still -- that were in before you filed your amendment, those excessive force claims are in and you can add any defendant that you think you have a plausible claim against.

Now, do you understand what I'm saying?  That should be -- you should be able to say to the guardian, with respect to your ADA contract, blah, blah, blah, here's where the magistrate judge dismissed those claims.  They were not in the complaint prior to the amended complaint being filed because the magistrate judge dismissed them.  It's too late to add those theories.  They're not going to be added.  You have to agree to strike those from the complaint without prejudice to your right to appeal in the event that the -- the plaintiffs decide to appeal at the end of the case.  Okay?  And she should agree to strike those claims.

Do you understand what I'm saying?

MS. DENNY:  I understand what you're saying.

Your Honor, we had filed a motion for preliminary review asking for the new amended complaint to be --

THE COURT:  I'm not doing another preliminary review.

MS. DENNY:  So --

THE COURT:  No.  We're five years into this case. I'm telling you what to do.  You don't have a right to preliminary review by a magistrate judge, blah, blah, blah. I'm telling you, meet and confer.  You -- you know -- you're an adult.  You can do this.  You have to go through the complaint with her and say, breach of contract claim, right?  There's only one lawyer in that room.  It's you.  You're going to go to

her and you're going to say, you can't bring this breach of contract claim because it was dismissed on preliminary review, do you agree; and if she says, no, I don't agree, and she -- I made it clear to her the next month she comes back to me, I'm going to be upset with her.

So you should be able to do this. You look perplexed, like this is an unreasonable demand I'm placing on you.

MS. DENNY: I was just trying to finish what I was saying before. So --

THE COURT: Well, take as much time as you want to say whatever it is you want to say.

MS. DENNY: Okay. So I had filed a -- the motion. I think one of the ways that would make it very efficient that I would propose to do and alternatively to that, since I think we are all on the same page, is to say that the preliminary -- the order on preliminary review applies to this new amended complaint, just to simplify things. Because I think if we all agree that the new theories are covered by the preliminary review, then I think that that might be the simplest way to move forward. Because, otherwise, I mean, we can agree, but it's -- having a court order that would just clarify that would be useful.

THE COURT: No. That's what meet-and-confer is. Okay? You're going to meet and confer and you're going to

obtain her agreement, which I doubt she will fail to do because she's a smart person and she sees me saying, you know, I'm not going to let you do that.

You're going to obtain her agreement that in the amended complaint, Counts Two, Three, and Five asserting claims that were rejected on preliminary review are dismissed without prejudice to the plaintiff's right to appeal.  Okay?  Then those -- then I will issue an order approving that agreement.  That -- I'd issue a one-word order saying granted with respect to that.  Okay?  That's going to be on you to meet and confer and get that stuff out of the complaint.

Do you understand what I'm saying?

MS. DENNY:  I do, your Honor.

THE COURT:  Okay.  Now that -- you have a completely legitimate concern that they should not use this amended complaint to bring in claims that have already been dismissed.  Okay?

So as -- as -- are you -- you're putting your hand to your head.  Am I -- is something going wrong here?  Do you --

MS. DENNY:  I've got it.  Thank you.

THE COURT:  All right.  Why don't we take a break for five minutes and we'll -- we'll resume from there.  Okay?

THE CLERK:  All rise.

(Recess taken from 2:57 p.m. until 3:04 p.m.)

THE CLERK:  Please be seated.  This hearing is back in session.

THE COURT:  Okay.  So let me leave no doubt about this.  I am in agreement with the Attorney General's Office here.  That's what I'm trying to convey, which is she can't use this complaint to bring things back into the case that were already dismissed.

I hope you understand that, because if you come back in a month and you're trying to put stuff in that is not in, I'm going to be upset with you because I've been very, very clear.

The only difference I have with the defendant's lawyer is that I want the defendant's lawyer to actually go through this with you without my presence, obtain your agreement, and then file something with the Court saying the parties have met and conferred and agree that the following claims can be struck from the amended complaint without prejudice to the plaintiff's right to appeal the initial decisions of the Court dismissing those claims on preliminary review.  That should narrow the case down to the excessive force claims.

Now, there are certain defendants who are being named now who were originally named in the complaint but their -- their claims -- claims against those defendants were dismissed.  Okay?  As to those defendants, to the extent you

are alleging facts about those defendants, that they are culpable in the excessive force claims that I've allowed you to bring, they can stay in unless the defendant wants to argue that the plaintiff thinks that he was grabbing a leg, but he wasn't grabbing a leg, and there's no evidence that he was grabbing a leg, and you're misunderstanding -- there's no basis for a plausible claim.

So let me try to be as clear as I can be here.  All right?

With respect to theories of liability, we're not adding in new theories of liability.  Any theories of liability that were originally brought are going to be stricken and I expect you to meet and confer and agree to that.  If you don't, defendant's counsel will tell me, I tried, Judge, she's not agreeing, and I'll say, okay, I'm going to rule from the bench, those are stricken.  All right?

But I hope we don't get there.  I hope we do a meet-and-confer and the parties file a -- make a joint filing saying, we now agree that these claims can be stricken, which I then will bless at the next conference.

So that's theories of liability.

With respect to events, no new events other than the events that were in the complaint the day before you filed your most recent amendment; and with respect to defendants, only defendants that you have a plausible claim that those

defendants are culpable with respect to those events.  Okay?  And I expect to see a joint filing at the next -- before the next conference where we agree that the following claims, the following -- the following defendants can be stricken from the complaint without prejudice to the plaintiff's right to appeal later to the extent that they were dismissed -- previously dismissed on a prior order.

And that should take care of theories of liability; that should take care of events giving rise to liability; and it should take care of most of the defendants.  But that leaves us with the plaintiffs may be trying to name defendants, new defendants, but you say there's no evidence that those defendants are liable:  They're not even -- they can't make a plausible claim that can survive Rule 12(b)(6) with respect to those defendants, Judge, and I want you to dismiss them.

They can disagree, you can file a motion to dismiss those defendants, a 12(b)(6) motion, saying they can't allege a plausible claim.  They're just mistaken, that guy wasn't there, there's no evidence that he was there, he wasn't involved in that event, he shouldn't be named as liable with that event, he shouldn't be required to answer a complaint with respect to those events, and please grant the dismissal.

So what I want first from the parties at the next monthly meeting is a joint filing regarding agreements reached after a meet-and-confer session regarding the scope of the

amended complaint, what claims would be dismissed, what defendants would be dismissed, if there are new events, and you say there aren't, those new events would be dismissed, and then you would represent in there that the defendant's claim that new the defendants A, B, and C, that there is not -- there's -- the plaintiffs have not alleged a plausible claim for relief against those defendants and we will be filing a motion to dismiss those defendants.

So claims, theories of liability, and events should be covered by the -- the joint filing and that leaves you only like a narrow group of maybe -- maybe you agree that those defendants can be added or maybe you don't.  If you don't, the way to address that is with a 12(b)(6) motion, right, and I can -- I can rule on that.  Okay?  And I can look at it quickly and tell you they're in or they're out.

So that's the way I'm proposing to handle that.  Does everybody understand?  Does the plaintiff understand?

MR. JUSTICE:  Yes.

THE COURT:  Does the defendant understand?

MS. DENNY:  Your Honor, the only issue that I foresee with the plan that you're proposing is that there are -- without having service on some of the new defendants, I can't represent them and I can't --

THE COURT:  Yeah.  So we can -- we're going to step back and talk about service, right?

MS. DENNY:  Yeah.

THE COURT:  I absolutely agree.  So we need to get them served.  And one of the things I routinely ask representatives from the Attorney General's Office to do is to facilitate, to the extent they can, service on these new defendants.  Usually, if they're still employed by the state, the state just routinely accepts service on their behalf.  To the extent they're not employed by the state, the state cooperates by giving the plaintiff any information they have about their last known whereabouts and the plaintiff has the obligation to go out and serve them.

Are you willing to facilitate service of process on these additional defendants so that -- and then you can decide to represent them or not.  Chances are very good that you're going to represent them because you have an obligation to indemnify them, except in limited circumstances, which I doubt you're going to say that any of these defendants were engaged in the kind of malicious or criminal acts for which the Attorney General's Office is not going to represent them and which the state is not going to indemnify.

These are -- I mean, in the 33 years I've been here, this happens all the time.  You think it might not here, or --

MS. DENNY:  No, I -- I completely -- that is exactly how I foresee it happening.  I just want to make sure that the timing is -- is working with what your plan is, which is that

first we do this joint, like, stipulation about what claims
are --

THE COURT:  No, you can -- no, no.  If you're not
going to represent people, you can't act on their behalf.  So,
yes, I just -- I wasn't saying that that has to occur before
any effort is made to serve, no.

MS. DENNY:  Okay.

THE COURT:  What I'm saying is I don't -- I'm not
going to send this -- and it was maybe a misunderstanding on my
part.  If so, I apologize.

I'm not going to ask a judge and I'm not going to
myself undertake a second preliminary review of the amended
complaint.  We never do that when an amended complaint is filed
in a *pro se* case.  It doesn't get a separate amendment -- a
preliminary review.

What I'm saying I'm going to have you do is go out
and serve these people.  I'm going to say to them -- I'm going
to say to you, do -- as an officer of the Court, do what you
can to facilitate service so that we aren't just spinning our
wheels, wasting our time, which is agree to accept service on
behalf of people you know you're going to represent, and as to
people you don't know because they're not around, cooperate by
giving them information and they can go out and try to serve
them.

Once they're served and you've decided are you going

to represent them, then you can do what I've asked you to do. All right? That -- that's how I intend to proceed. I don't want -- like to the extent you want to interpose an additional step of, hey, before I even talk to any of these people and decide whether I represent, we want you to do a preliminary review, Judge. I'm not doing that. Okay? Is that clear? Because we never do that. That's never happened to me in my 30 years.

MS. DENNY: So -- but, still, the -- I think we both were conferring about which claims and which defendants are being -- are proceeding and so it would only be after that that we would then accept service.

THE COURT: Because -- you're absolutely right. I was confusing. I apologize.

Service first, then -- you don't have to file a motion to dismiss or challenge anything until you have been served, right? So that's true. But in the case where the -- I know you're going to be the lawyer for all of those people, right? So it's just a matter of mechanics in getting this done. You can say, well, I don't know, we're -- I can -- I know what's going to happen. You're going to end up representing all of those people. So let's not waste time about that. Let's sit down with them and say, okay, I'm going to get these people in here, because I don't do preliminary review in five-year-old cases. All right? Never have, never

will.  No one's doing that.

And so we're not doing preliminary review and the only way you can bind -- benefit those people is by representing them and so the only way you can get these claims dismissed is by representing them.  So you've got to get service; you've got to represent them.  Okay?  Are we --

MS. DENNY:  Got it.

THE COURT:  I'm sorry if we're talking past each other, but this seems really straightforward to me.  I'm just --

MS. DENNY:  I don't think it's not straightforward. It's just that if -- I thought the next step was deciding who was -- we were proceeding against.  So I'm just saying that it needs to be that step first and then we'd accept service for those we agreed --

THE COURT:  But deciding who we're proceeding against as to new defendants, you can't represent them.  So the only way I could do that is if I did that on my own without any help from you.  Like as to defendant -- new defendant A, right, you haven't -- you aren't representing them at this point; right?

MS. DENNY:  Correct.

THE COURT:  So to the extent I want to decide, hey, is this claim done?  I want them to meet and confer and -- and represent -- I can't do that until that defendant has been

served and you've decided to represent them.  I know if they can serve them, you're going to represent them.

MS. DENNY:  Yup.

THE COURT:  And I -- because you are a lawyer and I need your help, I want you in the game.  I don't want to just review a complaint on my own without the benefit of defense counsel who's already in the case and knows the case better than me having a chance to tell me, Judge, you really should throw that defendant out.  I don't want to do it on my own, which I would be doing if I did preliminary review.  Do you see what I'm saying?

MS. DENNY:  I see.

THE COURT:  So that's why I don't want to do what you -- what I thought you wanted me -- is that what you were thinking you wanted me to do is to do, effectively, a preliminary review and throw out defendants before they had to be served?

MS. DENNY:  That is what we had originally asked.  It sounds like that's not how we're proceeding.  That's okay.

THE COURT:  Yeah.  That's what I was trying to explain.  I don't do that.  I wouldn't do it.  It's too burdensome for me.  When I have you, who knows so much about the case in front of me to help me see it from your perspective and I have a choice of, like, floundering around on my own or getting your input, I want your input.  And, plus, I think once

you -- these people are served, you -- you can easily agree to make issues go away and that's what I want to do.  Okay?

All right.  So in terms of timing --

THE CLERK:  Judge, excuse me.  I just want to -- there's a motion for service at government expense that the plaintiff filed.  Were you aware of that?

THE COURT:  I was not.  I haven't looked to see.

THE CLERK:  Okay.

THE COURT:  Is that objected to?

THE CLERK:  No.

THE COURT:  I --

THE CLERK:  She still has a deadline running.  It was filed on March 7th.  He attaches, I think, six or seven summonses to that motion.

THE COURT:  All right.  I -- what is the authority for doing service at government expense?

MS. DURYEA:  They had done that in the beginning for all the defendants because of his in pauperis.

THE COURT:  In forma pauperis status, yeah.

What I want, what I hope will happen, is that the Attorney General's Office will see that these new defendants are state employees who are being charged with liability for engaging in their ordinary government service and from the defendant's perspective, they were behaving admirably and appropriately.

MS. DURYEA: Right.

THE COURT: And as to defendants that are in that situation, the Attorney General's Office routinely represents them and the state of New Hampshire pays any liability that is imposed against them. And it's routine.

And the only kinds of cases where that doesn't happen is where a defendant is a state employee, but he's engaging in criminal activities or malicious kinds of activities that do not -- and so I just -- I think you should be able to sit down with the defense counsel and they should say as to defendants 1, 2, 3, and 4, are those new defendants; yeah, they're still working for the state, we've talked to them, we're going to represent them, we're going to enter appearances for them, we'll accept service for them.

MS. DURYEA: And we don't have to worry --

THE COURT: Then there's no cost to the government of anything.

MS. DURYEA: Exactly.

THE COURT: Okay? As to defendants C, D, and E, she might say to me -- sometimes they've said to me, hey, they don't work for us, they disappeared long ago, I don't know where they are, it's the plaintiff's burden. As to those people, they can tell you, here's their last known address, it's your job to find them, not ours. And as to those people, I can approve service at government expense and you can go out

and try to find them and serve them with the --

MS. DURYEA:  We're still working on one that we haven't gotten served.

THE COURT:  So you have served a number already of the new defendants?

MS. DURYEA:  In the beginning --

THE COURT:  Oh, from the original defendants.  Okay.

MS. DURYEA:  Right.

THE COURT:  Okay.  So, step one, how do we complete service and how quickly do need to do that.  I would say meet and -- so -- and defense counsel's absolutely right on this.  To the extent that I was confusing, I apologize.  I'm not suggesting that she must meet and confer and agree on behalf of new defendants that she has not currently decided to represent.  I'm not expecting her to agree to anything except accepting service.

Did you need to talk to me, Jen?

THE CLERK:  So we have an agreement on acceptance of service with the AG's office.  So if you orally tell them today, you need to, you know, look at this and either agree to accept service or not, then they can -- they can --

THE COURT:  Yeah.

THE CLERK:  -- file something.

If you look previously in this case, there is an order and we serve it with -- we essentially serve them, they

receive email, you know, electronic notice of it, and then they respond back as to whether they're going to represent them or not.

THE COURT:  Right.  That's what -- I -- see, this is -- this is not my job.  This is what my case manager does.  Okay?  I don't get involved with this.  And you should be able to do this.  Okay?

So, Jen, just get that process started.

THE CLERK:  Okay.

THE COURT:  So with all the new defendants, let's see if the AG's office accepts service under that process.  They'll notify you as to those people, you're done.  If they're people that they won't accept service on behalf of, they'll tell you and you'll have to serve them and I am approving your motion for service at government expense with respect to those new defendants.

Once those defendants are all in the case, and hopefully it'll happen very quickly, then I want a meet-and-confer about an agreement as to what portions of the amended complaint will be stricken.  So there's an agreement to strike Count One, Count Three, Count Five; there's an agreement to strike paragraph this, 37, 29, 38.  All of these agreements are entered into without prejudice to the plaintiff's right to appeal to the extent that those claims were originally pleaded and dismissed on preliminary review.  Okay?

And when I get that filing, I can say, by agreement, Counts One, Three, and Five are stricken from the amended complaint; paragraphs 32, 25, 27, stricken from the complaint; defendants A, B, and C are stricken from the complaint.

Then that -- then what happens is the plaintiffs -- excuse me -- the defendant should have a period of time, you can tell me how much you need, to determine whether you're going to file a 12(b)(6) claim as to any new defendant that is not subject to your stipulation for striking.

Do you see what -- do you see what I'm saying?

MS. DENNY:  (Nods head.)

THE COURT:  Okay.  So we'll start out -- so, you know, hopefully within the next two weeks we can get this service of process issue done.  Does that seem reasonable, to know what the Attorney General's Office's position is with respect to service within two weeks?

Jen, you can give them that -- follow the practice, standard practice, they'll look at it, reach out to people, and they'll respond, I accept service on behalf of A, B, and C within two weeks.  Okay?

THE CLERK:  Two weeks.

THE COURT:  All right.  Then, within the following two weeks, as to people the Attorney General's Office is representing, there should be a meet-and-confer session in an attempt to produce a joint stipulation specifying that certain

counts, certain paragraphs, certain defendants, can be stricken from the complaint by agreement but without prejudice to the extent that those claims, paragraphs, defendants, were previously dismissed on preliminary review.  Okay?

So now we're about a month out and then the -- the defendants should have an additional two weeks to file a -- any 12(b)(6) motion on behalf of any defendant they agree to represent that is not being stricken pursuant to this stipulation.  So we've got two weeks, four weeks, six weeks.  Okay?

And then we have 14 days or two weeks for you to file an objection and I then will rule on those papers and we will set another status conference in 60 days.  Okay?

So at that point, you'll -- there may still be a few straggler defendants that you're trying to serve, but we're going to keep pushing on with the case because I don't want to delay this five-year-old case any further.  Okay?

Okay.  So we've addressed this expert issue.  We've addressed this amended complaint issue.  Does anybody want to talk more about the amended complaint?

MS. DURYEA:  (Shakes head.)

THE COURT:  No?  Okay.

What is each party's position with respect to the completion of nonexpert discovery?  Is there anything else outstanding with respect to nonexpert discovery?

MS. DURYEA:  We still don't have video, but they say that they can't find it.

THE COURT:  Right.  You can make arguments at trial that there should be a -- it's called an adverse inference --

MS. DURYEA:  Yes, sir.

THE COURT:  -- based on spoliation.  You can file a motion for that as a motion in limine when we get closer to trial.  That's the way we can address -- when they say, sorry, we don't have it, we can't produce it, what you're left with is a spoliation motion in limine, which you can bring closer to trial.  Okay?

All right.  So -- yes.

MS. DENNY:  Sorry.  Two, I guess, nonexpert discovery issues.

One is we raised at the last status conference that there was an interrogatory issue where plaintiff had not responded to one of our interrogatories and that we'd meet and confer about it -- well, it was a few of the interrogatories, but that we'd meet and confer about it.  He still hasn't responded to one of them and I think that that's a particularly important one because it's just asking what the allegations are against certain defendants.

We've met and conferred.  I don't think we're getting anywhere.  And so I'm just asking --

THE COURT:  What's your -- what's your explanation

for why you're not answering the interrogatory?

MS. DURYEA:  That he doesn't know how to answer it.

THE COURT:  So, why, Mr. Justice, do you not know how to answer the interrogatory?

MR. JUSTICE:  Well, I don't remember the question. If you can tell me the question, I --

THE COURT:  Okay.

MR. JUSTICE:  I will tell you.

THE COURT:  What -- can -- is there a just one or two interrogatories or is there --

MS. DENNY:  It's actually just one.  So the question was:  Describe in detail and with specificity all actions or inactions you allege were taken related to the claims in your complaint by the following defendants, and then I just listed the defendants.

THE COURT:  Okay.  So this is a fairly straightforward, very typical type of interrogatory that is a request.

What you need to do as to each defendant, so you would say defendant James, and answer as to defendant James. As to defendant Smith, you give an answer.  And what you have to say is -- I don't have the actual language of the interrogatory.  Read it to me one more time.

MS. DENNY:  So describe in detail and with specificity all actions or inactions you allege were taken

related to the claims in your complaint by the following defendants.

THE COURT:  Okay.  So what they're really saying is with respect to each defendant, as to each claim, all -- any action or inaction -- he grabbed my leg, he administered the Taser, he was the boss of the guy that administered the Taser and stood by while he did it.

I don't know what the facts are, but they're basically, tell us about how you're going to prove your case, not witnesses, but what are you going to prove with respect to each defendant about how they used excessive force.

Because let's assume there are three people standing around.  Two of them were involved in tasing you, but one wasn't.  You sued all three.  Defendant A ran the Taser; defendant B held me down while they tried to apply the Taser; defendant C didn't do anything.  That's what he -- they're trying to find out.  They're trying to say it's time to put up or shut up and tell me how you're going to prove each.

So your answer should be, one -- there should be an answer for each of the defendants and each of the claims, like I'm picking dates just out of a hat, June 15th, Taser; July 17th, pepper spray.  There should be defendant A, the Taser incident, here's what he did; defendant A, the pepper spray incident, here's what he did.  Defendant B --

MS. DURYEA:  So he should give a narrative.

THE COURT:  Just what he did that made him liable.

MR. JUSTICE:  I did do that.

THE COURT:  Okay.  They don't think you've answered that.

MR. JUSTICE:  Well, the -- do you remember the motion that I filed saying that I wanted to add more defendants at a late hour?  I included the statements that the defendants made in their -- in their incident reports where it incriminates them.  So I did include that.

THE COURT:  Yeah, he -- this is -- an interrogatory is a written answer that you -- you have to sign and you have to -- it's fair to ask you to summarize -- it doesn't have to be every single minute fact, you know, he stood at right this point, he did -- it's like, no, this guy tased me; this guy held me down; this guy ordered the other guy to tase me.

That's what -- that's what -- I mean, they say give it in detail, et cetera, but if you want the detail, you're going to depose him, right?  If you -- you're going to depose him, I assume.

MS. DENNY:  That was going to be my second issue to address is just that I -- it's my understanding that I'm allowed to depose him after March 30th based on our timeline last time and I just want to make sure that's still the case.

THE COURT:  Well, I don't have the timeline in mind. When were we supposed to -- ordinarily we like to say, you

know, do your document discovery, get that done; do your nonexpert depositions, get those done; do your expert reports, get that done; do your expert depositions.

And so I just want him to take his best shot at answering your interrogatory. So whatever it is, she'll give it to you again one more time before she leaves today. You sit down with your guardian and go over the evidence and as to each defendant and each claim against those defendants, specify the evidence you have about what they did or didn't do that you think gives rise to liability.

MR. JUSTICE: Oh, okay.

THE COURT: Okay?

MR. JUSTICE: I thought that the -- my including the -- the --

THE COURT: Not enough.

MR. JUSTICE: -- the defendants' statements, incident reports that they filed, that they created when the incidents took place, and they self-incriminated them, that that was sufficient enough for -- for the Court to see that they were liable. That's why you had me recite some of the documents that day, remember?

THE COURT: I know, but it's not -- they have a right to ask you an interrogatory and they have a right to take your deposition under oath, which they're going to do.

MR. JUSTICE: Oh, okay.

THE COURT: Okay? So you're going to have to go through it again. That's just the way litigation works.

MR. JUSTICE: Okay. I don't mind.

THE COURT: Yeah. Okay. So before you leave, just give it to him again. And I've explained to him very clearly -- I assume that'll be sufficient for you; take each defendant, take each claim against each defendant, provide the evidence you have about what they did or did not do, in your view, that supports your claim that they are liable. And you just jot that down and that helps you -- I mean, they're really going to be asking you in detail about this when they do their deposition, but it gives them some starting point, which I think they're entitled to.

Now, once you get that interrogatory, you're basically done with your nonexpert discovery?

MS. DENNY: So I guess if we're talking about written --

THE COURT: Not expert document discovery. We're going to do the depositions next. Right?

MS. DENNY: Yes. I don't know how you -- if we find that there's just certain things with the new defendants --

THE COURT: Right. There may be issues with -- you are absolutely right; you may need to do some additional document discovery with respect to it and you shall be entitled to do that. I hope that it'll be very limited, because I think

we're getting -- the most useful period will be the depositions, and it sounds like they're not going to do any depositions of your people because of cost concerns.  So you then will -- when you put together your summary judgment motion, you'll use affidavits from those defendants -- hey, I never touched him, I wasn't there, somebody else was there, I didn't pull the trigger on the Taser, whatever -- and you'll file your summary judgment motion.

But in terms of document discovery, it sounds like we're done except to the extent that the defendants may need additional document discovery as to new defendants and we're too -- we -- until you get through the 12(b)(6) stage, we're not going to -- you know, until the stipulation is filed and until the 12(b)(6) stage is done, we're not going to know whether you need any additional.  So I'm not going to address that at all today.

I'm simply going to say answer this interrogatory and I think we're done with -- there could always be some little exception -- with non- -- with document discovery of the defendants and claims who are in the case prior to the amended complaint being filed.  Okay?

Which means you want to do your deposition of him, I would suggest you wait until the other defendants are in the case.  And it may not be -- what was the date by which you wanted to say by doing it?

MS. DENNY:  Last time --

THE CLERK:  Your January order stated 30 days after the plaintiff files an amended complaint.

THE COURT:  Yeah.  And we're probably not going to be able to do it because of -- I've laid out this 60-day time period.  So I would suggest to you, let's get settled once and for all, finally, what claims, what counts, and what defendants are in and what claim, what counts, what defendants are out, which hopefully will happen around 60 days from now.

Once that happens, you can request permission to take depositions.  Okay?  So it looks like it's going to be closer to 60 days, given I need to give you time to determine whether you're going to accept service, I need to give you time to meet and confer and agree on striking any portions of the complaint by agreement, and I need to give you time to make your 12(b)(6) arguments with respect to any defendants.

After that's all done, we're freezing the complaint, we're freezing the claims, we're freezing the defendants, we're freezing the facts.  Okay?  That's it.  That's done.

At that point, since -- I'll give -- at that point I'll give the defendant a chance again to say, hey, Judge, as to new defendants A, B, and C, we just need a little bit more interrogatory document discovery practice, whatever it is.  Hopefully you won't need any, but if you do, I'm inclined to give you some, but I don't want to set a schedule on that

today.  All right?

Assuming that you don't need it, then I'd say, okay, now we're open for depositions.  Let's do depositions.  Who do you want to depose, what's the order, what's the time?  Plaintiffs probably aren't going to do any because they're too expensive.  And I'll set up a time and you'll get to do any depositions that you want to do.  Okay?

MS. DENNY:  (Nods head.)

THE COURT:  After that -- and what you should be doing -- now, I -- I need to talk about this expert issue again.

Since you've been named his guardian, you are subject to the order and you will be able to get fees.  So what you should do as his guardian is you should be getting -- meeting with Mr. Justice and saying, I think we need an expert on this; we need to go out and try to find an expert on this; I can -- I'll start reaching out to people and contacting them and I'll set up a proposal with the judge, I want to hire so-and-so as my expert, here's his CV, you know, here's his proposed hourly rate, here's the general subject he's proposing to cover, he's agreed to do it within the $5,000 cap, please approve it.

I'll approve it and then when we get to expert disclosures, which you don't have to do yet, we're going to complete the -- the document discovery, the new defendants

41

coming in, the nonexpert depositions, and then we're going to set a deadline for experts. And you'll have an expert deadline that'll be first and then you'll have one that'll be about 30 days after you get their expert reports. Okay?

MS. DURYEA: (Nods head.)

THE COURT: And then you'll have a chance to depose their expert if you choose; you'll have a chance to depose their expert if you choose. And once that's done, we're done with all the discovery.

Then the defendant -- the defendant wants to file a motion for summary judgment. So we'll have to discuss a time for doing that, a time for responding, a time for reply, whether I'm going to allow oral argument. And if it survives summary judgment, then we're really done except for the trial, which we'll set the trial. Hopefully you'll be looking for a lawyer to represent Mr. Justice. If not, you and he will have to do the best you can.

But that's the way it's going to go. All right? So the only deadlines I'm setting now are for the -- the -- what I've already set, which you're down.

When you next come in, I'm going to be trying to find out, does the defendant need any document discovery as to the new defendants, what depositions does the defendant want to take and under what schedule. I'm going to ask you, how are you coming on trying to find an expert, how are you coming on

serving any of the remaining defendants, and I -- hopefully at that conference I'll set deadlines for any remaining completion of document discovery, a deadline for completion of nonexpert depositions, and a deadline for disclosure of experts.  Okay?

Is that making sense to you?

MS. DURYEA:  Yup.

THE COURT:  Making sense to you?

MR. JUSTICE:  Yes, your Honor.

THE COURT:  It is?  Pardon me?  Yes?

MR. JUSTICE:  Yes.

MS. DENNY:  Yes.

THE COURT:  Okay.  So I -- I granted that motion for service at government expense with respect to any defendant that the AG's office won't accept service of.

Jen, remind me that at the next conference I'm going to want to discuss those issues I've just outlined with the parties:  Any remaining document discovery as to new defendants, a schedule for completing nonexpert depositions, a proposed deadline for -- deadlines for disclosures of experts and expert reports, expert depositions, and summary judgment.  Okay?  Those are the things we're going to discuss at the next conference.

Yes?

MR. JUSTICE:  Do you remember the -- the motion I filed to change the venue?

THE COURT:  I don't remember that.

MR. JUSTICE:  All right.  In that motion, I -- I referred to a Tony Heath.  He was a peer of mine at the SPU, at the S-P-U, and he had a similar case against the state prison and he found an attorney to represent him.

I contacted that attorney and he refused to represent me.  He didn't give me any reasons why and he just wrote me a letter saying that he refused to represent me.  And that was an attorney that -- that knew about how to deal with the state prison abuse because he was dealing with Tony Heath's case.  And I have the letter here he sent me.  I don't know if you want to read it or if -- or --

THE COURT:  Nothing I can do about that.  I can't make him represent you if he doesn't want to represent you.

But what does that deal with change of venue?

MR. JUSTICE:  Oh, well, in the change of venue I said that it was impossible for me to get a fair trial here in New Hampshire because -- because in Boston it's more diversified.  Over here, it's more -- it's a White state. About 93 percent of the population is White and so they tend to discriminate more towards Hispanics or Blacks and that's why I haven't been able to get an attorney or -- I mean, that's the reason I believe that I can't get an attorney here in New Hampshire.

THE COURT:  Yeah, I -- respectfully, I just couldn't

disagree with you more.  I agree with you that we are one of the least heterogenous states in the country.  So Blacks and Hispanics are definitely underrepresented in New Hampshire compared to almost any other state in the United States, maybe Vermont, Maine, maybe like North Dakota.  We're definitely in the stop five least diverse states in the country.  I absolutely agree with you on that, but I absolutely disagree with you can't get a fair trial here.

Now, I seem to remember you were requesting a bench trial in any event, but to the extent you're requesting a bench trial, that's irrelevant.  So there would -- that would not be a basis for a change of venue.

But even if you were requesting a jury trial -- and maybe the state is asking for a jury trial, I can't remember -- but to the extent you are -- you are concerned, I just have had a vastly, vastly different experience.

MS. DURYEA:  I think he stated it wrong.  He was just trying to say that he can't get a lawyer, so it's going to be unfair.

THE COURT:  Yeah, that I understand.  But the idea that -- what I find in -- you know, as I said, I've been doing this for more than 30 years, had many trials with Hispanic and Black criminal defendants, civil plaintiffs.  In my experience, juries in New Hampshire go out of their way to be fair to people of different races in the state.  I just have found that

to be very true.

Now, you can disagree and I understand most people, Blacks and Hispanics, would not agree with me.  I'm just telling you that's been my experience over 30 years.  But, in any event, that would not be a basis to change venue.

That you can't find a lawyer here, I'm sorry to say this, it has more to do with the fact that you are suing the state, that you are suing the state for excessive force, and you were confined to an institution when you were suing the state for excessive force.

I also know after 30 years it's virtually impossible to get lawyers to represent people in those positions.  There are only a small number of lawyers that even consider it and it's very hard to deal with -- your guardian has developed a relationship with you and a relationship where there's some trust.  Lawyers that don't know you are, like, I don't want to represent somebody that's -- has psychiatric problems; it's just going to be more difficult for me.

And those are the realities.  And I -- but that isn't going to change whether you're in Massachusetts or New Hampshire or anywhere in the country.  That's just the reality.  It's hard.

And so we have a lot of *pro se* trials for people like you and that's -- that's why I'm -- I'm doing this.  I don't normally hold the hands of the parties the way I am in

this case.  I usually have one meeting with them and I say, go out and do your jobs, and that's the end of it.  Okay?  I'm meeting with you month after month because this five-year-old case was completely stuck in the mud and I'm trying to get it moving because I want to give you your day in court.

Yeah, it won't be perfect.  You probably -- you may not end up with a lawyer.  But I'm going to do everything I can to give you a fair hearing.  And that's the best I can do.  I can't make it perfect.  Okay?

MR. JUSTICE:  Thank you.

THE COURT:  And so that's what I'm doing.

You've been patient, you stay calm, you're -- you're following my orders and instructions.  That's what I want you to do.  I want you to be completely civil with the Attorney General's Office representative, no screaming and yelling.  I don't -- haven't seen that from you in the courtroom, I don't expect to see it or hear about it outside of the courtroom. And you keep working and behaving the way you are, I'll give you a completely -- as fair a trial as I can.

So that's where we are.  We're moving more slowly than I would like, but we are moving.  We're making a little progress every month.

But I think this amended complaint, I -- I think I told you it's going to slow everything down, and it is.  And I've -- and that's -- that's what happens when you add claims,

counts, defendants, this late in the case.  It's going to slow things down.  You knew it was.  I'm trying to come up with the fairest, most efficient procedure to keep it moving.

And so we're probably running like 30, 60 days later than I would like, but we're getting there.  Okay?  So a little bit at a time.

All right.  Anything else from you folks before we adjourn?

MS. DURYEA:  Do you want to see this?

THE COURT:  Yes.  The clerk will take a copy of the guardianship papers and we'll enter that in the docket so that we have a record that there -- and I will expect you, as long as you're his guardian, to appear at any proceedings to advise him.  I think Mr. Justice is a smart, capable man and unless you object, I'm going to continue to address my comments to him, and occasionally to you as well, but I want you to be here because as his guardian, you have ultimate responsibility to make sure --

MS. DURYEA:  Yes.

THE COURT:  -- these actions are taken on his behalf.

And between now and then, in addition to trying to get service done, start reaching out looking for potential experts now that you know you have some money --

MS. DURYEA:  Yes.

THE COURT:  -- that you can work with.  Okay?

Anything else from the defendant?

MS. DENNY:  No, your Honor.

THE COURT:  Okay.  Good.  We've got a good plan.  So we won't do a 30-day conference, we'll do a 60-day, and hopefully we'll see some progress between now and then.

Okay?  All right.  Thank you.

THE CLERK:  All rise.

(Proceedings concluded at 3:45 p.m.)

49

C E R T I F I C A T E


          I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 4/7/25          /s/  Liza W. Dubois
                           LIZA W. DUBOIS, RMR, CRR