| NH DEPARTMENT OF CORRECTIONS POLICY AND PROCEDURE DIRECTIVE | CHAPTER ___ Enforcement Operations STATEMENT NUMBER    5.58 |
|---|---|

| | |
|---|---|
| SUBJECT:    **USE OF PHYSICAL FORCE IN DEPARTMENTAL ACTIVITIES** | EFFECTIVE    1/15/2018 |
| | REVIEW DATE    1/15/20 |
| PROPONENT:    Christopher Kench, Director<br>*Name/Title* | SUPERSEDES PPD    5.58* |
| Commissioner's Office    271-8016<br>*Office*                    *Phone #* | DATED    03/30/2010 |
| | *Also Supersedes 5.29 dated 10/01/98<br>5.39 dated 11/01/98<br>5.56 dated 09/01/01 |
| ISSUING OFFICER: | DIRECTOR'S INITIALS ___ |
| | DATE ___ |
| *Helen E. Hanks, Commissioner* | APPENDIX ATTACHED:<br>YES ___    NO ___ |

| REFERENCE NO:    See reference section on last page of PPD. |
|---|

## PURPOSE:
A.    To establish parameters for the use of physical force options and reporting such use.
B.    Definitions: For the purposes of this PPD, the following words will mean:
   1.    Control: to hold in restraint; to check
   2.    Harm: injure or damage
   3.    Incapacitate: to deprive of strength or ability
   4.    Reasonable: within the bounds of common sense
   5.    Restrain: to limit or restrict
   6.    Force: power made operative against resistance; exertion
   7.    Direction: an order or command; authoritative indication
   8.    OIC: Officer in Change and/or Shift Commander

II.    APPLICABILITY:
   To all staff

III.    POLICY:
The NH Department of Corrections Values Statement calls upon all staff members to treat those with whom we come in contact with respect. By communicating with individuals in our custody/supervision in a respectful manner we can lessen the likelihood that force will be needed to resolve a situation. This is particularly true when individuals are seeking our assistance or when staff intervention may be required.
It is the policy of the Department of Corrections:
A.    To use the reasonable level of physical force in situations that are justifiable self-defense, or when used to protect others, prevent loss of life, prevent serious bodily injury, protect from self abuse, protect serious destruction of property, prevent escapes, or to affect an arrest. Physical force will only be used when all other available and expedient means have been exhausted, and only in accordance with appropriate statutory authority. ████████████████████████████████████
Under no circumstances will the use of physical force be justified as a means of punishment. All security and non-custody personnel shall be trained in approved methods of self-defense.

DOC_2925

2

B. All staff members will be informed that the use of force is a last resort to control individuals.

C. Departmental personnel are authorized to use physical force, including lethal force, in accordance with RSA 627:6. (Attachment 1)

D. Deadly force includes the use of firearms or any other item that, in the manner used, would likely cause death or serious bodily injury. (RSA 627:5)

E. Use of Force options as approved by the New Hampshire Police Standards and Training Council (PSTC), and qualified NH DOC trainers appear below. There are seven distinct categories for reference as listed in F and G below. It should be noted that these options are not defined as steps. Incidents requiring force may develop rapidly, and the reasonable level of force necessary to bring control to any situation requires judgment and implementation of that option of force by the staff involved.

F. <u>Non-Physical Use of Force Options</u> include all occurrences where order is maintained or restored through the use of the following options:

    1. Professional Presence is any DOC employee carrying out their official duty; a staff member's mere presence is often enough to bring a situation under control, or maintain that control.

    2. Verbal Direction means directions rendered by a staff member to an individual. The goal of staff is to resolve situations at this level.

G. <u>Physical Use of Force Options</u> include all occurrences where there is physical contact between employees and others in the line of duty, where the purpose of such contact is to bring a rapid closure to a situation that encompasses at least one of the criteria listed in III, A. This physical contact includes all occurrences where order is maintained or restored, or an arrest is effected, through the use of the following options:

    1. Oleoresin Capsicum (OC) Spray

        a. OC is designed and intended to temporarily incapacitate or disorient an individual in order to reduce the likelihood of injury to the individual and to reduce the likelihood of injury to staff involved in bringing an individual under control.

        b. OC is a less than-lethal and temporary method of control or incapacitation

        c. OC will be issued to specific staff certified in its use to include:

                Staff members are certified only after they have successfully completed approved training by a qualified instructor in the use of OC.

        d. Field Services staff that are certified in the use of OC will be issued OC and are expected to carry the OC on their person while on duty.

        e. Whenever OC is used as a planned use of force option, _____ the event must be videotaped by unit staff (PPD 5.91 *Video Camera Recording For Documentation*).

        f. _____ OC is not authorized for use as punishment.

        g. _____ OC will not be used on offenders who are in restraints unless the individual continues to be combative and dangerous. Individuals who have been sprayed with OC and who are continuing with their uncontrollable behavior should be checked by the medical staff immediately after being placed in a chair or stretcher restraint. For facilities without 24 hour medical coverage, the Health Service Center at the NHSP/M will be notified.

        h. Once the individual has been incapacitated, the use of OC will cease immediately.

        i. Medical staff (where medical staff is on duty) will follow up by asking the individual if they need medical attention and the individual will be afforded such attention if requested. If symptoms persist for over 45 minutes medical attention will be provided.

        j.

        k.

DOC_2926

      l. ███████████████████████████████████████████

      m. OC can be used against animals where necessary when staff has reason to believe the animal will attack. An incident report must follow.

2. Empty Hand Control

      a. Soft techniques carry the possibility of injury, and include some escorts, pressure points, and takedowns. ████████████████████████████████

      b. Hard techniques have a higher possibility of injury, and include ███████████████████ ███████████████████████████

3. Impact Weapons: Impact weapons may consist of a straight baton.

      a. Soft techniques involve ██████████████████████████

      b. Hard techniques involve ██████████████████████

4. Chemical Weapons

      a. The use of chemical agents such as CS and CN is a less than lethal force that may be helpful in restoring order. ██████████████████████

      b. Chemical agents are designed and intended to temporarily incapacitate or disorient individuals in order to reduce the likelihood of injury to the individuals being brought under control and to the staff involved in bringing the individuals under control; to temporarily deny access to an area; or to clear an area of unruly offenders.

      c. Chemical agents used in concentrated amounts in restricted areas may be hazardous to health. Consequently, they may be employed only by authorized individuals who have been trained in their use and effects. All personnel authorized to use chemical agents receive thorough training in their use and in the treatment of individuals exposed to the chemical agents.

      d. ███████████████████████████████████████ ███████████████████████ Chemical agents are not authorized for use as punishment.

      e. Chemical agents ███████████████████████████ for use by trained and authorized staff.

      f. Whenever chemical agents are used as an option, the event will be videotaped by staff. (PPD 5.91 *Video Camera Recording For Documentation*).

      g. █████████████████████████████████████ A monthly inventory of all agents by type, quantity, determination of their condition, and expiration date shall be maintained. Agents that are outdated may be used for training. Replacement of consumed or out-dated agents is the responsibility of the Wardens. All chemical agents will be signed in and out on a "Weapons/Security Equipment Control Log."

      h. ██████████████████████████████████████████

5. Deadly Force
Deadly force is a last resort option, and may only be opted for according to appropriate statutory authority. (See RSA 627:5 and 627:6)

6. Electronic Control Device (ECD)

    a. ECD Institutional Use

      i. ECDs are a less than-lethal use of force option that is designed to disrupt muscle control in order to temporarily incapacitate or disorient a hostile individual.

      ii. ██████████████████████████████████████████ ██████████████████████████████████████████ ECDs are not authorized for use as punishment.

      iii. ██████████████████████████████████████████ used. ECDs will not be used on individuals who are in restraints unless the individual continues to be combative and dangerous.

      iv. Once the individual has been incapacitated, the use of the ECD will cease immediately.

DOC_2927

4

    v.     Staff will follow up be asking the individual if they need medical attention and the individual will be afforded such attention if requested.

    vi.    [REDACTED]

    vii.    [REDACTED] For facilities without 24-hour medical covers, the Health Services Center at NHSP/M will be notified.

    viii.    [REDACTED]

    ix.    ECDs can be used against animals where necessary when staff has reason to believe the animal will attack. An incident report must follow.

    x.    The primary intent of the above is to reduce the possibility of injury to staff or subjects when attempting to bring an individual under control

    xi.    ECDs will be issued to specific posts when those posts are manned by staff certified in the use of the ECD. These posts include: [REDACTED]

    xii.    Staff members are certified only after they have successfully completed approved training by a qualified instructor in the use of ECDs. The approved lesson plan is that which is provided from Taser®. As part of the required training, every officer may receive a 5-second exposure in a controlled static training environment. The exposure is required to be done at the officer's initial New Hampshire Department of Corrections training only. There is no exposure requirement at re-certification trainings. Exposures done by other agencies will not satisfy this requirement.

    xiii.    Whenever an ECD is used as a planned use of force option, [REDACTED] the event must be videotaped by unit staff as required by PPD 5.91 (*Video Camera Recording for Documentation*).

    xiv.    If an ECD is used outside of a facility and there is a video recording available, the officer will annotate the video recording for potential recovery by investigations staff.

    xv.    If the ECD is used in an immediate use of force option on departmental grounds, e.g. a facility, the Shift Commander shall notify investigations staff and the investigations staff will attempt to recover any video recording that might exist within our video recording system.

b. ECD Field Services Use

    i.    ECDS shall be used only by officers who have completed the Field Services ECD Training Program specific to the device issued. Basic user ECD certification must be renewed annually. NHDOC - Field Services does not require an officer to be exposed to a ECD device however; if an officer volunteers to be subjected to an exposure they will be allowed to do so. Exposures will only be administered by the Department's ECD Instructor(s).

    ii.    ECDS [REDACTED] and must be signed out pursuant to the ECD sign in / sign out sheet (attachment 3).

    iii.    Officers shall spark test their ECD device at the time of sign out for a full five seconds. Officers should check the expiration date of both ECD cartridges and request a new cartridge from the chief if required.

    iv.    [REDACTED]

DOC_2928



v.

vi.

vii.    Officers should not use their ECD device on a handcuffed subject unless the subject continues to be combative or resistive and lesser attempts to control the subject is ineffective or the officer believes they will be ineffective.

viii.

ix.    ECD devices are very effective on animals and should only be used on an animal that is aggressive towards the officers or others and is a danger to themselves, other animals, or humans.

x.

xi.

xii.

xiii.

xiv.

xv.

DOC_2929

6

xvi.

xvii.

xviii.    Once in custody, if the subject has been exposed to ECD probe deployment or a drive stun, the officer(s) shall immediately summon EMS personal to the scene. The officer(s) shall advise EMS personnel that the person has been subjected to an ECD device and relate the approximate time the action occurred. No one other than EMS professionals shall remove probes from areas of concern; joints, hands, feet, head and additional sensitive soft tissue areas of the body to include the neck, face, eyes, groin, or breast area (females only).

xix.    In the event that EMS personnel is unavailable or refuses to respond, probe removal from a suspect's skin may be performed in the field by certified ECD operators/officers. Since the probes may have blood on them (biohazard) all officer(s) should wear protective latex gloves when handling. Appropriate precautions should be used by all officers to prevent accidental needle sticks from contaminated probes. However, no one other than EMS professionals shall remove probes from the areas of the body as outlined above (section k).

xx.    Upon removal from the subject's body or clothing the probes shall be secured by inverting them into the wire spool holding bay of the expended ECD cartridge, and then placing the cartridge, any corresponding AFID tags, and the wires into an evidence bag. The wires should be placed loosely in the evidence bag and if possible remain attached to the ECD probes. Do not wrap the wires, pull on the wire or break the wires. Wire should be handled with care as they potentially contain evidentiary value.

xxi.    If available digital pictures should be taken of the probe penetration/drive stun sites and/or any secondary injuries caused by falling to the ground, etc.

xxii.    Each department issued ECD will be equipped with a camera which will begin recording upon activation of the unit in order to document any incident of ECD use beyond the spark test. Removal and digital storage of any video recording for evidence purposes or otherwise shall be done by a certified ECD instructor only. Use of any ECD device must be properly documented using an Incident Report Form and ECD Post–Deployment Form (attachment 2). These documents must be completed by the end of the current shift and turned into the Chief PPO for review and approval. The chief and director or designee will be notified immediately of any ECD deployment.

H.    Physical force, for the purpose of definition, will not include the following:
1.    Routine searches, pat downs, examinations, or inspections where the individual is submissive.
2.    Routine application of handcuffs, leg irons, or other restraining devices that are applied to prevent incidents or provide security and where the individual is submissive.
3.    Incidental physical contact that is non-violent, non-confrontational and non-enforcement in nature.
4.    Routine arrests under RSA 504/651 where no altercation took place.

I    Medical Care
1.    Following the use of physical force, the individual will be offered immediate medical care by a medical staff member (where medical staff is on duty) and health services will be further notified via Incident Report.
    a.    Passive Use of Force e.g. handcuffing does not apply.
2.    Staff will ensure that anyone affected by chemical agents receives treatment as soon as practical following the usage.
3.    Individual requests for medical care should be reported at the time of the request to the duty RN.
4.    All persons injured in an incident will receive immediate medical examination and treatment, unless treatment is refused by the injured. Refusal will be documented.
5.    Following the use of OC, the individual, when feasible, should be allowed to rinse the affected areas

DOC_2930

with running water, fan-forced air or fresh air, and if applicable, remove contact lenses.

    6.    Staff should be familiar with the applicable Material Safety Data Sheet (MSDS) for OC and chemical weapons, and the first aid information contained therein.

    7.    Individuals in the community will be brought to the nearest medical facility/hospital upon request.

J.    Report Writing

    1.    In each and every case where physical force, use of oleoresin capsicum spray, chemical agents, or ECD is used or a weapon is discharged, the OIC of the incident will ensure that the incident is properly documented using the Incident Report Form and that all staff involved document their involvement using the Statement Form. The OIC of the incident will ensure the completeness of each statement and make certain that all of the statement forms are attached to the Incident Report and distributed as required.

    2.    A copy of the report must be turned in or faxed to the Warden, Director, or designee no later than the conclusion of the tour of duty.

    3.    All reports will be thorough, accurate, legible, concise, and timely. The CPPO, Shift Commander or Unit Manager will approve these reports. These reports will explain the following: why, against whom, when, where, with what effects, type of chemical used (if applicable), amount of chemical used (if applicable), whether medical attention was offered or necessary, the resolution of the situation, and all other pertinent information deemed necessary.

    4.    Participating officers' statements should be accurate as to the physical part they played. Statements such as "minimum force used", and "applied restraints" are not acceptable. Officers should explain what they saw and did. Examples:

        a.    "I ordered Individual Smith to drop the shank. He refused, so I grabbed his right arm, while Officer Green grabbed his left arm, and we pulled him down to the floor. I then placed my knee on his shoulder to pin him to the floor until Officer Green was able to pull his hands behind his back and hold his wrists while applying the handcuffs."

        b.    "Individuals Brown and Smith refused a direct order to break up the fight, so I grabbed Individual Brown's right arm and pulled him over to his bunk. I held him until Officer Green pulled Individual Smith by the left arm and removed him from the dorm through the door."

    5.    The OIC at the use of force scene will ensure that the incident report and accompanying statements contain each element described above in 1, 2 and 3.

    6.    The Shift Commander on duty shall:

        a.    Check all reports to ensure they are accurate, legible, and complete.

        b.    Determine whether immediate or subsequent action is necessary. Take action as is necessary.

        c.    Have inaccurate, illegible, and/or incomplete reports corrected before the reporting staff member leaves for the day.

        d.    Ensure that all reports relating to the Use of Force Incident are turned in to the Warden's office before the end of the shift. If the Warden's office is closed, the paperwork will be placed in a designated pickup spot to be picked up by a member of the security office at the start of the next business day.

    7.    PPOs and Community Corrections security staff involved in a use of force situation will complete an initial incident report prior to leaving duty that day. Telephone notifications to their chain of command will be done as soon as possible prior to the end of the workday. Follow-up reports, if needed, will be done on the next business day.

K.    A Serious Incident Review will be implemented if the event warrants in accordance with PPD 1.33 *Quality Assurance Serious Incident Review*.

IV.    PROCEDURE:

    A.



    B.    When dealing with an individual who is uncooperative and the use of force options are being considered,

DOC_2931

staff have two options:

1. Immediate action: this action is necessary when the actions of the individual are such that swift and sudden response from staff is needed to take control of a potentially dangerous situation. Immediate action may become necessary in an assault situation, to prevent escape, self-harm, or in self-defense.

2. Delayed action: this action is always desired over immediate action, although it is certainly not always possible. When action is delayed, several benefits surface that help create a peaceful and safe resolution to the potential use of force situation.

C. Delayed action scenario

1.

The Shift Commander as well as the Warden will be notified and kept updated of the delayed action situation. The PPO on the scene will determine whether immediate or delayed action is appropriate. The CPPO and Field Services Director's office will be advised. Community Corrections security staff will notify the Community Corrections Director/designee.

2. Other tactics include:

a.

b.

c.

d.

e. An individual may be kept locked in a cell until they become compliant. During a delayed action scenario, a 15-minute log will be kept for checks on the individual. Should the individual be in handcuffs, they will be under constant watch.

f. All situations will be resolved using a reasonable level of force. The goal is to resolve the situation without injury to staff or individual if at all possible. Time can be a valuable resource in peacefully resolving a hostile situation.

L. Physical Force Steps

1. A reasonable level of force will be utilized to bring a situation under control. When a delayed action situation begins to evolve into a physical force situation, a brief meeting prior to instituting contact is advised so that all staff is clear on what is expected of them. They must be made aware of the dangers involved in the situation, such as ▓▓▓▓▓▓▓▓▓ etc. A short history of the individual's behavior and reasons for being disruptive is helpful at this time. Factors such as what use of force option is the best option for this particular situation needs to be considered. Facts to consider are ▓▓▓▓▓▓▓▓▓ and any other pertinent facts that would lead to a decision on what option of force to use in the given situation. The OIC, Response Team Leader or designee should consider contacting the Health Services Unit and seek input concerning the individual's medical history which would be relevant in determining the level of physical force to be used. If possible, medical staff is to respond to the scene and render any assistance possible to resolve the incident or medical care needed as a result of the incident.

2.

3. Once a decision has been made to utilize a physical force option, the removal of all uniform hardware

DOC_2932

4. ██████████████████████████████████████████████
████████████████████████████████████████████████ The reasonable level of force necessary to overcome the disturbance is authorized.

5. In the institutional setting, a staff member shall be videotaping all incidents during a delayed action situation. Once the use of physical force has brought about control, the video person must not be concerned with the individual's modesty. It is critically important that the video show all aspects of the situation. An individual's need for privacy due to nudity, if that is the case, does not outweigh the need for a detailed video journal of the event. The operator will not pan away during the event.

6. ██████████████████████████████████████████████
████████████████████████████████████████████████ As soon as possible, put the individual on their back or into a sitting position to avoid breathing difficulties associated with lying on the stomach in a handcuffed position. Once resistance has ceased, and the individual is under control, the use of force must also cease. It should be reiterated to the individual that no one is trying to hurt them, and that it is recognized that they are becoming cooperative.

7. ██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

8. ██████████████████████████████████████████████

9. Once incapacitated, the individual should be escorted to an appropriate cell. Restraints should be removed as soon as possible. Time of initial placement and time restraints are removed must be documented and by whom. (See PPD 5.81 *Restraining Devices*)

10. In each and every use of physical force situation, the individual will be offered immediate medical care by a medical staff member (where medical staff is on duty) and health services will be notified via Incident Report.

11. Any staff member who is hurt should inform the OIC and appropriate measures should be taken to treat the injury. Even minor injuries can lead to complications, and should be documented.

E. In no instance is public criticism so severe as when officers abuse the right to use force. Public inquiry is avoided by proper documentation and professional reputation. In the final analysis, well-trained officers using human relations skills are our best deterrent to using physical force.

F. Video Taping

1. Immediate Action Scenario
   In an immediate action scenario, staff safety is paramount. The video camera needs to be obtained as quickly as possible, but not at risk to staff safety. Video recording of the incident should begin as quickly as possible. At the conclusion of the incident, each member of the response team should appear before the camera and provide the information outline in Section IV, F 2.

2. Delayed Action Scenario
   In a delay action scenario that may require the use of physical force, each member of the response team will appear on the taping camera without a helmet. The last person to be taped will be the assigned team leader. On tape each member will state the following:
   a. Name
   b. Rank
   c. Position on team
   d. Responsibility assigned
   The assigned team leader will provide the following information:
   a. Name
   b. Rank
   c. Position on team
   d. Circumstances surrounding incident, i.e., inmate (name) committed an assault on an officer

DOC_2933

      e.     Introduce the person operating the camera

      f.      Record date, time and location

      The assigned team leader will also identify the inmate(s) involved and inmate identification numbers and state the operational plan.

    3.    The video tape is considered evidence and preserved as such for any criminal and/or disciplinary action deemed appropriate.

G.    In each instance where the use of physical force, as defined by this policy, has occurred, the responsible Warden/ Director shall review the incident within five (5) working days. The Warden/Director shall complete a written summary (Attachment 4) of the review and maintain the summary in a "Use of Force" file.

H.    Use of force incidents will be reviewed by quality assurance staff at the Commissioner's request for the purpose of improving operations.

REFERENCES:

Standards for the Administration of Correctional Agencies
Second Edition Standards

Standards for Adult Correctional Institutions
Fourth Edition Standards

      **4-4199 thru 4200; 4-4202 thru 4203; 4-4206**

Standards for Adult community Residential Services
Fourth Edition Standards

      **4-ACRS-2B-01 thru 2B-03**

Standards for Adult Probation and Parole Field Services
Third Edition Standards
      **3-3175**

Other
      **PPD 5.07   Notification of Events and/or Incidents**
      **PPD 5.20   Firearms**

KENCH/lb

Attachments

DOC_2934

Attachment 1
Page 1 of 2

**Section 627:5**

**627:5 Physical Force in Law Enforcement. –**

I. A law enforcement officer is justified in using non-deadly force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest or detention or to prevent the escape from custody of an arrested or detained person, unless he knows that the arrest or detention is illegal, or to defend himself or a third person from what he reasonably believes to be the imminent use of non-deadly force encountered while attempting to effect such an arrest or detention or while seeking to prevent such an escape.

II. A law enforcement officer is justified in using deadly force only when he reasonably believes such force is necessary:

(a) To defend himself or a third person from what he reasonably believes is the imminent use of deadly force; or

(b) To effect an arrest or prevent the escape from custody of a person whom he reasonably believes:

(1) Has committed or is committing a felony involving the use of force or violence, is using a deadly weapon in attempting to escape, or otherwise indicates that he is likely to seriously endanger human life or inflict serious bodily injury unless apprehended without delay; and

(2) He had made reasonable efforts to advise the person that he is a law enforcement officer attempting to effect an arrest and has reasonable grounds to believe that the person is aware of these facts.

(c) Nothing in this paragraph constitutes justification for conduct by a law enforcement officer amounting to an offense against innocent persons whom he is not seeking to arrest or retain in custody.

III. A private person who has been directed by a law enforcement officer to assist him in effecting an arrest or preventing an escape from custody is justified in using:

(a) Non-deadly force when and to the extent that he reasonably believes such to be necessary to carry out the officer's direction, unless he believes the arrest is illegal; or

(b) Deadly force only when he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the imminent use of deadly force, or when the law enforcement officer directs him to use deadly force and he believes such officer himself is authorized to use deadly force under the circumstances.

IV. A private person acting on his own is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to arrest or prevent the escape from custody of such other whom he reasonably believes to have committed a felony and who in fact has committed that felony: but he is justified in using deadly force for such purpose only when he reasonably believes it necessary to defend himself or a third person from what he reasonably believes to be the imminent use of deadly force.

V. A guard or law enforcement officer in a facility where persons are confined pursuant to an order of the court or as a result of an arrest is justified in using deadly force when he reasonably believes such force is necessary to prevent the escape of any person who is charged with, or convicted of, a felony, or who is committing the felony of escape from official custody as defined in RSA 642:6. The use of non-deadly force by such guards and officers is justified when and to the extent the person effecting the arrest believes it reasonably necessary to prevent any other escape from the facility.

VI. A reasonable belief that another has committed an offense means such belief in facts or circumstances which, if true, would in law constitute an offense by such person. If the facts and circumstances reasonably believed would not constitute an offense, an erroneous though reasonable belief that the law is otherwise does not make justifiable the use of force to make an arrest or prevent an escape.

VII. Use of force that is not justifiable under this section in effecting an arrest does not render illegal an arrest that is otherwise legal and the use of such unjustifiable force does not render inadmissible anything seized incident to a legal arrest.

VIII. Deadly force shall be deemed reasonably necessary under this section whenever the arresting law enforcement officer reasonably believes that the arrest is lawful and there is apparently no other possible means of effecting the arrest.

**Source.** 1971, 518:1. 1981, 373:1-3, eff. Aug. 22, 1981.

DOC_2935

*CHAPTER 627*
*JUSTIFICATION*

# Section 627:6

**627:6 Physical Force by Persons With Special Responsibilities. –**

I. A parent, guardian or other person responsible for the general care and welfare of a minor is justified in using force against such minor when and to the extent that he reasonably believes it necessary to prevent or punish such minor's misconduct.

II. (a) A teacher or person otherwise entrusted with the care or supervision of a minor for special purposes is justified on the premises in using necessary force against any such minor, when the minor creates a disturbance, or refuses to leave the premises or when it is necessary for the maintenance of discipline.

(b) In a child care program licensed or exempt from licensure under RSA 170-E, necessary force shall be limited to the minimum physical contact necessary to protect the child, other children present, the staff, or the general public from harm.

III. A person responsible for the general care and supervision of an incompetent person is justified in using force for the purpose of safeguarding his welfare, or, when such incompetent person is in an institution for his care and custody, for the maintenance of reasonable discipline in such institution.

IV. The justification extended in paragraphs I, II, and III does not apply to the malicious or reckless use of force that creates a risk of death, serious bodily injury, or substantial pain.

V. A person authorized by law to maintain decorum or safety in a vessel, aircraft, vehicle, train or other carrier, or in a place where others are assembled may use non-deadly force when and to the extent that he reasonably believes it necessary for such purposes, but he may use deadly force only when he reasonably believes it necessary to prevent death or serious bodily injury.

VI. A person acting under a reasonable belief that another person is about to commit suicide or to inflict serious bodily injury upon himself may use a degree of force on such person as he reasonably believes to be necessary to thwart such a result.

VII. A licensed physician, or a person acting under his or her direction, or an advanced registered nurse practitioner (ARNP) working for the department of corrections may use force for the purpose of administering a recognized form of treatment which he or she reasonably believes will tend to promote the physical or mental health of the patient, provided such treatment is administered:

(a) With consent of the patient or, if the patient is a minor or incompetent person, with the consent of the person entrusted with his care and supervision; or

(b) In an emergency when the physician or the advanced registered nurse practitioner (ARNP) reasonably believes that no one competent to consent can be consulted and that a reasonable person concerned for the welfare of the patient would consent.

**Source.** 1971, 518:1, eff. Nov. 1, 1973. 2000, 225:1, eff. July 31, 2000. 2002, 112:1, eff. July 2, 2002.

DOC_2936

Attachment 2
1 of 2

# New Hampshire Department of Corrections

## Division of Field Services

## ECD Post Deployment Form

DATE OF INCIDENT_____

**COPY** OF COMPLETED **INCIDENT REPORT** IS TO BE ATTACHED

| |
|---|
| NAME: |
| DOB:                    CORIS ID #: |
| ☐ NO INJURY     ☐ COMPLAINT OF INJURY     ☐ VISIBLE INJURY |
| DESCRIBE INJURY(S):<br><br><br>*PLEASE INDICATE LOCATION OF PROBE(S) AND/OR DRIVE STUN(S) ON THE ATTACHED ANATOMY SHEET. |
| PHOTOGRAPHS TAKEN?     ☐ YES     ☐ NO |
| WAS EMS NOTIFIED? (REQUIRED FOR ALL USE OF ECD DEVICES)     ☐ YES     ☐ NO |
| DID EMS RESPOND TO SCENE?     ☐ YES     ☐ NO   (REFUSED TO RESPOND) |
| RESPONDING EMS AGENCY/PROVIDER: |
| |
| TRANSPORTED TO MEDICAL FACILITY   ☐ YES     ☐ NO<br>IF SO, NAME OF FACILITY<br><br> |
| IF SO, WHICH FACILITY? |

| |
|---|
| DID ANYONE WITNESS THE INCIDENT?     ☐ YES     ☐ NO<br>STATEMENT(S) TAKEN?   ☐ YES     ☐ NO (INDICATE ON WITNESS LINE FOR EACH TAKEN)<br>IDENTIFY NAME, ADDRESS, PHONE |
| WITNESS #1<br><br> |
| WITNESS #2<br><br> |

DOC_2937



FRONT                                    BACK

DOC_2938

15

Attachment 3

## Field Services
## ECD Sign Out Log

| Officer | Date/Time Signed Out | Date/Time Returned |
|---------|----------------------|--------------------|
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |
|         |                      |                    |

PPD 5.58

DOC_2939

Attachment 4

### New Hampshire Department of Corrections
### Facility Use of Force Review Form

**To:** _____                **Date:** _____

**From:**

**Subject:**    Use of Force Review                **Involved ECD?**    ___
                                                    **Involved OC?**     ___
                                                    **Use of Restraint Chair?**  ___

---

PPD 5.58 requires that a review be completed of any non-routine use of force that occurs within a NH Department of Corrections Facility.  Please review the below referenced incident and provide a written summary to me no later than the identified date. The summary should include:

_____ Review of the submitted documentation to ensure that it was complete and accurate (signed when appropriate).
        ***Ensure that <u>all</u> involved staff completed a statement or secondary report.***
_____ Review of staff action to ensure compliance with PPD 5.58 and all other relevant policies.

_____ Was incident videotaped? _____ . If yes; hand held _____ , facility system _____ .
                                 (Yes/No)                      (Check all that apply)
_____ Review all available video from beginning to end.  Verify that this was done _____ .
        ***If incident was not video taped, explain in detail why not in summary.*** (Initials)
_____ Recommendations (if any):

Incident Date/Time: _____ @ _____ , Location: _____

Reporting Staff Member: _____ Primary Individual: _____ #_____

               **Due date of Summary:** _____

---

Specific issues to be addressed and reviewed:

_____

_____

_____

_____
                                            _____
                                            Chief of Security

**<u>Chief of Security:</u>**
Comments:

_____

_____
                                            _____
                                            Chief of Security's Signature

**<u>Warden:</u>**
Comments and Directed Action:

_____

_____
                                            _____
                                            Warden's Signature

DOC_2940



DEPARTMENT OF CORRECTIONS
STATE OF NEW HAMPSHIRE
P. O. BOX 1806
CONCORD, NH  03302-1806

**INTRA-DEPARTMENT MEMORANDUM**
*Office of the Commissioner*

| | | | |
|---|---|---|---|
| **FROM:** | Helen E. Hanks<br>Commissioner | **DATE:** | April 25, 2019 |
| **SUBJECT:** | PPD 5.58 Amendment <u>Confidential</u><br>Oleoresin Capsicum (OC) Spray | **OFFICE:** | Commissioner's Office |
| | | Phone: | 271-5603 |
| **TO:** | All Staff | | |

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

CONFIDENTIAL PPD AMENDMENT

Effective immediately, PPD 5.58 *Use of physical Force in Departmental Activities* shall be amended to include:

G (1.) (n).   OC strength shall not exceed 2,000,000 Scoville Heat Units.

Thank you,

Helen E. Hanks
Commissioner



STATE OF NEW HAMPSHIRE
**DEPARTMENT OF CORRECTIONS**
**Office of the Commissioner**
P.O. BOX 1806
CONCORD, NH 03302-1806
603-271-5603    FAX: 888-908-6609
TDD ACCESS: 1-800-735-2964
www.nh.gov/nhdoc

HELEN E. HANKS
COMMISSIONER

PAUL D. RAYMOND, JR.
ASSISTANT COMMISSIONER

May 02, 2023

To:     NHDOC Staff
From:   Helen E. Hanks, Commissioner
RE:     Policy Amendment - Use of Stretcher as a Restraint in NHDOC Facilities

---

Effective today, use of stretchers as a restraint tool in any NHDOC facility is prohibited until further notice. Use of restraint chairs, by personnel trained in the use of restraint chairs, is allowed pursuant to policies as published on the departmental Intranet (e.g., PPD 382.00; PPD 368.00 and PPD 544.00)

Stretchers are only to be used in a healthcare transport and not used in use of physical force events.

Medical or psychiatric providers may order involuntary emergency treatment, seclusion, or restraint if it is determined that a personal safety emergency exists, per COR 502.07 and PPD 544.00 Involuntary Emergency Medical and/or Psychiatric Treatment. Such instances will be under the supervision and guidance of healthcare personnel. In those instances, the use of restraints for behavioral management is based on the principle of Least Restrictive Alternative.

This directive applies to all individuals in the care and custody of the NHDOC.

*Promoting Public Safety with Respect, Professionalism, Dedication and Courage as One Team*

DOC_2942