UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
*************************************
William Soler Justice,              *
                                    *
            Plaintiff,              *
     v.                             *    Civil No. 1:20-cv-00517-PB
                                    *
Christopher T. Sununu, et al.,      *
                                    *
            Defendants.             *
                                    *
*************************************
```

### DECLARATION OF BENJAMYN CARVER

I, Benjamyn Carver, with personal knowledge, hereby declare, pursuant to Federal Rules of Civil Procedure 56(c)(4) and 28 U.S.C § 1748, as follows:

1. I am providing this declaration in support of the Defendants' Motion for Summary Judgment in the above-captioned case.

2. I worked as a Corrections Office with the New Hampshire Department of Corrections from 2005 until around May 2019. I was assigned to the Secure Psychiatric Unit for 12 or 13 years.

3. I attended the State of New Hampshire Police Standards and Training Academy in 2005.

4. During my experience working for the Department of Corrections, I received yearly in-service trainings on the use of force and de-escalation. I received training on the use of OC spray (also known as pepper spray) approximately every two years. I received Mental Health Worker training at NH Hospital prior to working in the SPU in 2006 or 2007. The course was around 1-2 weeks. The course included training on using minimal force during restraints. We also received training on de-escalation during our annual force continuum training. I also believe

I did a correspondence course on working with residents/patients with special needs, which included training regarding de-escalation. I believe I completed this course sometime in 2006.

5.    During the use of force training, we were trained on the current use of force policies and procedures for the Department of Corrections (DOC). The procedure is the same for those who were committed in the SPU and residents housed in any other DOC facility. The policy in place during the time period when Plaintiff was at the SPU allows officers to use "the reasonable level of physical force in situations [for] self-defense, …to protect others, prevent loss of life, prevent serious bodily injury, protect from self abuse, protect serious destruction of property, prevent escapes, or to affect an arrest."  PPD 5.58. Further, OC spray can be used "to temporarily incapacitate or disorient an individual in order to reduce the likelihood of injury to the individual and to reduce the likelihood of injury to staff involved in bringing an individual under control." PPD 5.58.

6.    I was a Corrections Sergeant while Plaintiff was housed at the SPU in 2018 and 2019. While Plaintiff was at the SPU, there were several incidents in which Correctional Officers, including myself, were required to take steps to protect themselves and others from Plaintiff, and to protect Plaintiff from self-harm. I was involved in one incident with Plaintiff relevant to this Complaint on July 13, 2018. The incident report that I wrote regarding the July 13, 2018 incident is numbered DOC_013, of <u>Exhibit 7</u>, and it is a true and accurate statement of what occurred and my involvement in this incident to the best of my recollection. I reviewed additional statements from staff from the incident on July 13, 2018, numbered DOC_012 and DOC_015-020 of <u>Exhibit 7</u>. Those statements are also consistent with my recollection of what occurred.

- 3 -

7.      My actions and those of the other DOC staff on July 13, 2018 were reasonable and necessary to ensure that Plaintiff was not engaging in self-harming behaviors and to gain Plaintiff's compliance with lawful orders. Plaintiff continued to block any view of into his cell, which prevented staff from ensuring his safety inside of his cell. Plaintiff's cell did not have a camera. Plaintiff refused repeated attempts to remove the papers covering his cell door and vent and to come to the door of the cell to be handcuffed. OC spray was a reasonable method to gain compliance with our orders prior to initiating a cell extraction. Plaintiff also needed to be removed from his cell because he had flooded it. Unfortunately, the OC spray was not working and was unable to reach Plaintiff were he was standing. When Plaintiff failed to comply despite many requests for compliance, even after the attempted use of OC spray, it was reasonable and necessary to perform a cell extraction to remove Plaintiff from his cell. The cell extraction was performed according to policy, and the actions were made more difficult by the wet and slippery conditions. All of my actions, and those of other staff, during this incident fell into the reasonable force continuum, consistent with my training and experience.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on the date listed below.**

Date: 11/11/2025                                    /s/ Benjamyn Carver
                                                    Benjamyn Carver