## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

```
*************************************
William Soler Justice,                *
                                      *
             Plaintiff,               *
   v.                                 *   Civil No. 1:20-cv-00517-PB
                                      *
Christopher T. Sununu, et al.,        *
                                      *
             Defendants.              *
                                      *
*************************************
```

## DECLARATION OF JONATHAN BOISSELLE

I, Jonathan Boisselle, with personal knowledge, hereby declare, pursuant to Federal Rules of Civil Procedure 56(c)(4) and 28 U.S.C § 1748, as follows:

1. I am providing this declaration in support of the Defendants' Motion for Summary Judgment in the above-captioned case.

2. I have worked as an officer with the New Hampshire Department of Corrections (DOC) since 2008. I was assigned to the Secure Psychiatric Unit in 2011 and then I became a Corporal at the NH State Prison for Men. I have been working as a Probation and Parole Officer (PPO) with the DOC since 2013, but I would sometimes take shifts at the SPU until around 2021.

3. I attended the State of New Hampshire Police Standards and Training Academy in 2008.

4. I receive yearly in-service trainings, including use of force and weapons trainings. I am a certified trainer on Taser and defensive tactics, and I train other PPOs in these areas. Prior to working in the SPU, I received a several-day mental health training at New Hampshire Hospital.

5.  During the use of force trainings, we were trained on the current use of force policies and procedures for the Department of Corrections (DOC). The procedure is the same for those who were committed in the SPU and residents housed in any other DOC facility, and it is also the same for probation and parole officers. The policy in place during the time period when Plaintiff was at the SPU allows officers to use "the reasonable level of physical force in situations [for] self-defense, …to protect others, prevent loss of life, prevent serious bodily injury, protect from self-abuse, protect serious destruction of property, prevent escapes, or to affect an arrest." PPD 5.58.

6.  I was involved in one incident with Plaintiff relevant to this Complaint while I was working a shift at the SPU on July 13, 2018. The incident report that I wrote regarding the July 13, 2018 incident is numbered DOC_017, and it is a true and accurate statement of what occurred and my involvement in this incident to the best of my recollection. I reviewed additional incident reports from July 13, 2018, numbered DOC_012-20 (Exhibit 3). Those incident reports are also consistent with my recollection of what occurred.

7.  My actions and those of the other DOC staff were reasonable and necessary during this incident on July 13, 2018, as explained in my report. It was reasonable and necessary to enter Plaintiff's cell because Plaintiff had covered up all points of view into his cell and appeared to have trashed it, and if we are unable to view the cell, we cannot do welfare and safety checks to ensure that Plaintiff is not self-harming. Other attempts at gaining Plaintiff's compliance had failed (including verbal commands and nurse's attempt at de-escalation). We were additionally unable to effectively use the OC canister because it could not reach him in his cell.

8. When performing the cell extraction, the floor was slippery and Plaintiff stepped down from a high point on his shelf, such that it was more difficult to secure Plaintiff. I utilized pain compliance to ensure that Plaintiff did not move while he was being handcuffed, but utilized only a minimal level of force under the circumstances. Pain compliance and pressure points are tools to gain compliance where an individual is not compliant in my training and experience. I also considered Plaintiff's dangerousness when considering whether and how to perform a restraint. Even though Plaintiff was civilly committed and not incarcerated, I was aware that all SPU patients were nevertheless dangerous because otherwise, they would not be housed at the SPU.

9. Additionally, Plaintiff's handcuffs were not applied incorrectly based on my training and experience. I train on proper handcuffing and have experience with different types of handcuffs. The type of handcuffs used for Plaintiff only have a keyhole on one side and the handcuffs were turned inward in this instance with Plaintiff. Turning the handcuffs inward does not affect the fit of the handcuffs, but it may be more time consuming to remove the handcuffs.

10. I was never made aware on or around April 28, 2020 that Plaintiff had filed a Complaint against several DOC employees. I was never contacted by Plaintiff, or anyone acting on Plaintiff's behalf, that Plaintiff had filed this Complaint or initiated a lawsuit against me. I first became aware of this lawsuit on or around March 15, 2025, when I was contacted by my employer about this matter.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on the date listed below.**

Date:    11/14/2025                                /s/
                                                 Jonathan Boisselle