UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| William Soler Justice, | \* |
| | \* |
| Plaintiff, | \* |
| v. | \* Civil No. 1:20-cv-00517-PB |
| | \* |
| Christopher T. Sununu, et al., | \* |
| | \* |
| Defendants. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION OF PAGE H. KIMBALL

I, Page H. Kimball, with personal knowledge, hereby declare, pursuant to Federal Rules of Civil Procedure 56(c)(4) and 28 U.S.C § 1748, as follows:

1. I am providing this declaration in support of the Defendants' Motion for Summary Judgment in the above-captioned case.

2. I worked as a Corrections Officer with the New Hampshire Department of Corrections from January 2001 to June 2025. I was assigned to the Secure Psychiatric Unit from May 2007 until August 2018, when I took a lateral position at the women's correctional facility.

3. I attended the State of New Hampshire Police Standards and Training Academy in 2001.

4. I receive yearly in-service trainings on the use of force and de-escalation. I received training on the use of OC spray (also known as pepper spray) approximately every two years. I was not certified on the taser and was not assigned the taser throughout my career. I received Mental Health Worker training at NH Hospital prior to working in the SPU in around 2008. It was an 80-hour, approximately 2-week course. I took 24 correspondence courses

regarding corrections, including several mental health related courses. We also received training on de-escalation during our annual force continuum training.

5. During the use of force training, we were trained on the current use of force policies and procedures for the Department of Corrections (DOC). The procedure is the same for those who were committed in the SPU and residents housed in any other DOC facility. The policy in place during the time period when Plaintiff was at the SPU allows officers to use "the reasonable level of physical force in situations [for] self-defense, …to protect others, prevent loss of life, prevent serious bodily injury, protect from self-abuse, protect serious destruction of property, prevent escapes, or to affect an arrest." PPD 5.58.

6. I was a Corrections Corporal while Plaintiff was housed at the SPU, until my transfer in August 2018. While Plaintiff was at the SPU, there were several incidents in which Correctional Officers, including myself, were required to take steps to protect themselves and others from Plaintiff, and to protect Plaintiff from self-harm. I was involved in one incident with Plaintiff relevant to this Complaint on February 18, 2018. The statement form that I wrote regarding the February 18, 2018 incident is in Exhibit 5, page DOC_009, and it is a true and accurate statement of what occurred and my involvement in this incident to the best of my recollection. I reviewed additional incident reports and statements in Exhibit 5, numbered DOC_001 and DOC_008 regarding the incident on February 18, 2018. Those reports and statements are also consistent with my recollection of what occurred.

7. On February 18, 2018, Plaintiff was banging non-stop on a steel door in the infirmary section of the SPU. Plaintiff was approximately 6'8" and weighed approximately 350 pounds at the time was pounding the door so hard non-stop for approximately 45-50 minutes. Plaintiff continued to self-harm – banging his hand and foot and yell, which could be heard

throughout the entire facility. He was hitting the steel door with his foot, leg, hands or arm for so long and so hard that I believed he would break his hand or foot in many places. I believe if we didn't take action, he would have to go on an ambulance or medical run to the hospital. After many different staff members talking to him to deescalate, he continued to self-harm. He was out of control and would not stop for 45-50 minutes. I believe Cpl. Murray was in charge of the unit and Nurse Lombard declared a PSE (Personal Safety Emergency) on Plaintiff. The nurse ordered him to be restrained to prevent him from self-harming. Cpl. Murray ordered a team to extract patient Soler to prevent him from self-harm. Plaintiff refused to handcuff up several times and stated that he wanted to go to combat. I ensured the team had their helmets, vests, gloves, and if they chose, knee pads and elbow pads. I offered to take the shield to prevent me and my team from be punched in the head. Plaintiff refused to handcuff up again through the tray slot and stood on top of his counter / bed corner in the infirmary room. I was believed that he would jump on top of us while going in the room. I controlled him with the shield and CO Deblois used the taser. He was placed in the restraint stretcher and there were no injuries to staff.

8.  My actions and those of the other DOC staff were reasonable and necessary to ensure that Plaintiff was placed into restraints while keeping Plaintiff and staff safe, as explained in my statement form from the incident. Officers were relying on medical's determination that Plaintiff needed to be placed into restraints to prevent self-harm. Plaintiff was also very tall and heavy – he was bigger than all the other officers involved in the incident. Despite our attempts to get Plaintiff to comply, he refused to follow my commands and commands of other staff. We followed textbook procedure in performing the cell extraction and getting Plaintiff into restraints.

9.  Plaintiff was clearly out of control and had been out of control since he arrived at the SPU. Just a few days prior, it was reported to me that Plaintiff was threatening to throw feces

at staff. In that same incident he urinated on his door and the urine went under the door and into the hall. I pride myself on my ability to deescalate situations, but Plaintiff was extremely uncooperative and particularly difficult.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on the date listed below.**

Date: 11/12/25

/s/ Page H. Kimball
Page H. Kimball